[Civ. No. 7528.   Third Dist.   Jan. 21, 1949.]

MARGARET V. WISSNER, Respondent, v. LOUISE M. WISSNER et al., Appellants.

Vernon F. Gant and Carlos J. Badger for Appellants.

Cleary & Zeff for Respondent.

ADAMS, P. J.—Plaintiff, respondent before this court, brought this action against Louise and Leandous Wissner, the parents of plaintiff's deceased husband, Leonard O. Wissner. The complaint alleged that plaintiff and said decedent were married in California in 1930; that at the time of said marriage decedent had no property and that all property which he thereafter acquired was community property acquired by the joint efforts of the spouses; that Leonard died testate on November 14, 1945, leaving plaintiff as his surviving widow; that during the marriage the husband Leonard made transfers of community property to defendants, consisting of moneys, stocks, bonds and an automobile, without

plaintiff's knowledge or consent and without consideration, and as a result plaintiff was defrauded of her community interest in such transferred assets; and that defendants refused to account to plaintiff for such assets and claimed to be the owners thereof, though they were without right, title or interest therein or thereto.

In a second count plaintiff alleged that decedent had served in the Army for several years prior to his death, and had taken out a national service life insurance policy in the sum of $10,000; that he had paid the premiums thereon from his salary, which was community property, but had, without plaintiff's knowledge or consent, made his mother principal beneficiary and his father contingent beneficiary thereof; and that since the death of plaintiff's said husband defendants had received from the proceeds of said policy $882.05, but refused on demand to pay to plaintiff any portion thereof.

A third cause of action was stated, but it is not involved in this appeal.

As an answer to plaintiff's first cause of action defendants set up that moneys which decedent had paid over to them had been paid to them to satisfy a debt of decedent to them for aid and assistance which they had given him during his attendance at medical school. As for the second cause of action, they conceded that premiums on the life insurance policy had been paid with community funds, but alleged that the proceeds of such policy were payable to them alone by virtue of the federal statutes governing the issuance of such policies, and that such statutes alone controlled, and prohibited plaintiff from claiming any interest therein.

After trial of the issues findings were made in favor of plaintiff on the first and second causes of action; and from the judgment which followed defendants have appealed, raising two issues, the first, whether the evidence supports the finding that the transfers to defendants were without consideration; and, second, whether the community property law of California gives plaintiff a right to any part of the proceeds of the life insurance policy.

We are satisfied that there is sufficient evidence to support the conclusion of the trial court on the first count. Defendants admitted that during his service in the Army, decedent, who was first a captain and then a major, had paid to them approximately $3,000 in cash, and that he transferred to them an automobile which had been purchased in 1938. The moneys turned over were deposited in a joint

bank account in the names of defendants and decedent, upon which both decedent and defendant Louise Wissner drew checks. After Leonard's death the defendants withdrew the balance remaining in the account. The automobile pink slip was received by defendants from their son in the fall of 1943, and they sold the automobile after his death for $1,080.

In a letter written by Leonard from India on October 22, 1944, beginning "Dear Folks All," which letter was delivered to the Bank of America, Modesto, by defendants, he stated that he had already sent a check for $30 and was enclosing another for $90.91. He then added: "I want a bank account, probably commercial, to be held jointly by you folks and by me. I want the allotments to be deposited in it. I want a reserve of $250 to $500 to be allowed to accumulate and the bonds to be purchased as I previously instructed them, and turned over to you for safekeeping. I want a routine accounting sent to you and referred to me as you think best or necessary. I would like to have a check book sent me in case of need. Please make this all very clear to the bank. Present this letter if necessary." The evidence shows that the joint account between the defendants and their son was opened November 10, 1944, with an initial deposit of $337.50. Thereafter 12 deposits of like amounts were made through allotments by decedent directly to the bank, and there were others. Decedent from time to time drew upon the account and once his mother drew $500 and sent it to him. After Leonard's death she withdrew the balance and deposited it in defendants' own account with the American Trust Company. The Bank of America account was then closed.

Mrs. Wissner testified that $2,906.27 and the money for the automobile was all defendants received. She stated that prior to the time this account was opened the bank had been buying bonds for decedent out of funds sent it by Leonard, which bonds were in the names of decedent and one Naomi Beiler; that the bank had mailed the bonds to defendants who had put them in a safe deposit box, and, after Leonard's death, had turned them over to the attorney for his estate.

Plaintiff testified that she and Leonard were married in 1930, before the latter had completed his medical training. She was a nurse, and continued to practice her profession, her earnings being put into a joint account with her husband, which account continued until November, 1944, at which time Leonard withdrew all of the balance. Regarding the automobile turned over to defendants, she stated that she

finished payments thereon after her husband went into the service. For six months after he went into the service plaintiff received an allotment of $90 per month, then it was discontinued.

Lloyd Wissner, brother of Leonard, testified regarding letters which he received from Leonard. One, dated September 26, 1943, requested Lloyd to get the doctor's instruments and equipment moved "before M. receives the notice that I have stopped her allotment." In another dated January 7, 1943, he stated that he wished his attorney could get an insurance policy away from plaintiff. In one dated September 14, 1943, Leonard mentioned "Naomi," and stated that he wished he could find some way of forcing plaintiff to a settlement and a divorce. Another dated August 24, 1943, referred to efforts to get the pink slip for the automobile away from plaintiff and referred to exerting pressure upon her. In another dated August 14, 1943, he stated he stopped the allotment to Margaret to force her to come to terms. Also he stated that he was enclosing the pink slip to the automobile, saying "Possibly it would be best to have it transferred to you and then no one could touch it." On June 19, 1945, he referred to the automobile, stating Lloyd could continue to use it, "at any rate for the time being"; and in another dated July 21, 1945, decedent again expressed his wishes regarding the car.

Mrs. Louise Wissner testified regarding moneys sent to Leonard while he was in medical school in 1927 and 1929, but she was unable to state the amount thereof. She also introduced letters from Leonard sent while still in training, expressing thanks for money received, and making vague statements such as "Maybe some day we can make things right." At the time the bank account was directed to be opened in 1944 it was directed that the parents continue the purchase of bonds; but that was not done.

The testimony of defendant Leandous Wissner was indefinite and vague, both as to money sent to Leonard while at school, the amount thereof, and any promises to repay; and there is no evidence that any statement was ever sent him, or any payments made by him on account of same.

From the evidence in the case and the inferences deducible therefrom, the trial court's findings in favor of plaintiff are fully justified. Evidence and presumptions *contra* merely created a conflict which that court was authorized to resolve; and with its conclusions this court may not interfere. Further-

more, we think it is apparent that the transfers made to defendants were not made with an intent to repay them for moneys expended for his medical education, but were made in order to prevent his wife from receiving them, and to force her into a divorce and settlement to further plans which decedent was making for his future from which she was to be excluded.

Regarding the right of plaintiff to recover from defendants a portion of the proceeds of the life insurance policy, it is not denied that premiums paid by decedent were paid from community funds; and that plaintiff had a vested interest in one-half of such community property cannot be gainsaid. (Civ. Code, § 161a.) In *Mazman* v. *Brown,* 12 Cal. App.2d 272, 273 [55 P.2d 539], it was held that where insurance on a husband's life was bought and paid for with community funds, the husband could give away no more than one-half of the proceeds without the written consent of the wife. Numerous authorities so holding were there cited. Also see *Grimm* v. *Grimm,* 26 Cal.2d 173, 175 [157 P.2d 841]. From those decisions it is obvious that had the policy been issued by a private insurance company, no question of plaintiff's right to one-half of the proceeds could arise.

Appellants contend, however, that rights to the proceeds of a national service life insurance policy must be determined solely by federal statutes. They cite section 802(g) of title 38 U.S.C.A. [54 Stats. 1009] which provides, regarding such policies:

"The insurance shall be payable only to a widow, widower, child (including a stepchild or an illegitimate child if designated as beneficiary by the insured), parent (including person in loco parentis if designated as beneficiary by the insured), brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries but only within the classes herein provided."

They particularly rely upon section 454a of the World War Veterans' Relief Act, title 38 U.S.C.A. [49 Stats. 609], which provides in part:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall

be exempt from taxation, *shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.''* (Italics added.) And they assert that Congress by the foregoing enactment not only intended to control the proceeds of such policies after they were paid to them, but that its power to do so is found in the provisions of the United States Constitution, article I, granting to Congress the power to ''provide for the common defense and general welfare of the United States,'' to ''raise and support armies,'' to ''provide and maintain a Navy,'' to make rules and regulations for the government and regulation of the land and naval forces, and to make all laws which shall be necessary and proper for carrying into execution the foregoing powers. They also rely upon article VI, paragraph 2, of that Constitution providing that such Constitution and the laws of the United States which shall be made in pursuance thereof, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the Constitution and laws of any state to the contrary notwithstanding.

However, the foregoing declarations are all subject to the limitations imposed by the Tenth Amendment, to wit, that the powers .of the federal government are only such as are delegated, and all other powers, except such as are specifically denied to the states, repose in the states and not in the federal government; and the Fifth Amendment, providing that the Congress shall not deprive any person of life, liberty or property without due process of law, nor take his property for public use without just compensation.

The question before us, then, is did Congress intend, by section 454a, *supra,* to provide that the proceeds of a national service insurance policy, after payment of same to a named beneficiary, are not subject to the laws of a state governing title to property within that state, and, if it did so intend, had it the power under the Constitution to so provide, and thus divest a wife in California of property rights which under the laws of this state are community property in which such wife has a vested interest.

It cannot be denied that since the enactment of section 161a of the California Civil Code in 1927, a wife in this state has a vested interest in one-half of the earnings of the spouses since that date. Such rights have been recognized by both federal and state courts. See *Lang* v. *Commissioner of In-*

*ternal Revenue*, 304 U.S. 264 [58 S.Ct. 880, 82 L.Ed. 1331, 1336, 118 A.L.R. 319]; *United States* v. *Malcolm*, 282 U.S. 792 [51 S.Ct. 184, 75 L.Ed. 714]; *Commissioner of Internal Revenue* v. *Harmon*, 323 U.S. 44 [65 S.Ct. 103, 89 L.Ed. 60, 63, 67]; *Poe* v. *Seaborn*, 282 U.S. 101 [51 S.Ct. 58, 75 L.Ed. 239, 243]; *United States* v. *Pettigrew*, 81 F.2d 666.

In *Mundt* v. *Connecticut Gen. Life Ins. Co.*, 35 Cal.App.2d 416, 421 [95 P.2d 966], decedent's mother was designated as the beneficiary of a life insurance policy paid for with community earnings. A judgment awarding one-half the proceeds to the widow was affirmed, the court saying:

"From the leading case of *New York Life Ins. Co.* v. *Bank of Italy*, 60 Cal.App. 602 [214 P. 61], through the many intervening cases, down to *Travelers Ins. Co.* v. *Fancher*, 219 Cal. 351 [26 P.2d 482], the only test applied to this problem has been whether the premiums (on a policy issued on the life of a husband after coverture) are paid entirely from community funds. If so, the policy becomes a community asset and the nonconsenting wife may recover an undivided one-half thereof 'without regard' [as said in *Dargie* v. *Patterson*, 176 Cal. 714, 721, 169 P. 360] 'to the amount or condition of the estate remaining in his [the husband's] hands at the time of his death', and we might add, without regard to the disproportionate size of the premium when compared with the face of the policy."

In *Bazzell* v. *Endriss*, 41 Cal.App.2d 463 [107 P.2d 49], the trial court found that the naming of the mother of an insured husband as beneficiary of his life insurance constituted a voluntary gift without valuable consideration, and was supported by evidence which showed that the premiums were paid from the husband's earnings during coverture and that at no time did his wife consent to a gift of her community interest in the policy. (See Civ. Code, §§ 161a, 172.)

In *Grimm* v. *Grimm*, 26 Cal.2d 173 [157 P.2d 841], the court said that where premiums on an insurance policy issued on the husband's life are paid with community funds, the policy is community property; and that "It is settled that even though the insurance contract may provide that the insured husband has the right to change the beneficiary without the wife's consent where she is named as such, any change of beneficiary without her consent and without a valuable consideration is voidable, and after the death of the husband the wife may maintain an action for her community share in the proceeds of the policy. (*Mazman* v. *Brown*,

12 Cal.App.2d 272, 275 [55 P.2d 539]; *Travelers Ins. Co.* v. *Fancher, supra* [219 Cal. 351], at p. 356; *Dixon Lumber Co.* v. *Peacock,* 217 Cal. 415, 418 [19 P.2d 233]; *Blethen* v. *Pacific Mut. L. Ins. Co., supra* [198 Cal. 91], at p. 101 [243 P. 431]; see 3 Cal.Jur. 10-Yr. Supp. 622; 114 A.L.R. 545, 554.)''

The principles set forth in the foregoing cases are reiterated in *Pacific Mutual Life Ins. Co.* v. *Cleverdon,* 16 Cal.2d 788, 792 [108 P.2d 405], though the decision in that case was different because it was found that the earnings out of which the premiums were paid were not community property, and that they were applied to the premiums with the knowledge and consent of the surviving spouse of the insured.

Also see *In re Towey's Estate,* 22 Wn.2d 212 [155 P.2d 273, 275]; *In re Miller's Estate,* 44 N.M. 214 [100 P.2d 908, 910]; *Blackmon* v. *Hansen,* 140 Tex. 536 [169 S.W.2d 962, 965].

In *Cooke* v. *Cooke,* 65 Cal.App.2d 260, 266, 269, 272 [150 P.2d 514] (hearing in Supreme Court denied) it was held that where premiums on an insurance policy were paid by the husband out of community funds (the earnings of the husband) the wife had a vested interest in the portion of the insurance purchased by such community funds, and was entitled to at least a proportionate amount of the proceeds of the policy paid for with community funds; and that to deprive her of it by a legislative act would be to deprive her of a vested property right of which she could not be divested without due process of law; that to do so would violate the Fourteenth Amendment to the federal Constitution, and section 13 of article I of the California Constitution.

Reasoning from the foregoing cases, the conclusion seems to follow that, in view of the Fifth Amendment, the federal government had no power to provide, as it is contended it did in section 454a, *supra,* that payments made to a beneficiary of a national service life insurance policy shall be exempt from the claims of the widow of the deceased insured to the right vested in her under the laws of this state to one-half of such payments *after* their receipt by the beneficiary. As hereinbefore stated, appellants rely upon article VI, paragraph 2, and article I, section 8, of the United States Constitution. But no cognizance is taken of the Fifth Amendment, which limits the power of the federal government as the Fourteenth Amendment limits those of the states, and prohibits the taking of private property without due process of law. It therefore seems to follow that if, as decided in *Cooke* v. *Cooke, supra,* a surviving wife of a decedent who had paid for an insurance

policy out of community funds could not be deprived of her vested interest in the proceeds of such policy without violating the provisions of the Fourteenth Amendment, the federal government could not deprive a wife of the deceased veteran of her vested right to one-half of the proceeds of a national service life insurance policy paid for out of community funds, at least after such funds had come into the possession of a named beneficiary other than the wife, without violating the Fifth Amendment.

In the case before us the judgment was entered against the beneficiaries for one-half of the payments on the policy which they had already received, and they were ordered to pay to plaintiff one-half of proceeds received by them. Such judgment is fully in accord with the judgments in the Cooke case and other cases above cited, and cannot be said to infringe upon any rights or powers of the United States under the provisions of the United States Constitution relied upon by appellants.

As said in 6 Ruling Case Law, section 436, page 440:

"The requirement of due process of law was introduced into the constitution of the United States by the fifth amendment as a limitation upon the powers of the national government, and by the fourteenth amendment as a guaranty against any encroachment upon an acknowledged right of citizenship by the legislatures of the states."

As to the limits of the powers of Congress, in 1 Cooley's Constitutional Limitations, eighth edition, 11, the author says:

"The government of the United States is one of *enumerated powers;* the national Constitution being the instrument which specifies them, and in which authority should be found for the exercise of any power which the national government assumes to possess."

It is said in 11 American Jurisprudence, section 334, page 1143, that: "The Fifth Amendment to the Federal Constitution prevents the Federal Government or its agencies from depriving any person of his property without due process of law. The Fourteenth Amendment to the Federal Constitution, and all the various state Constitutions, prevent any action by a state which would accomplish such deprivation."

And in 12 American Jurisprudence, section 569, page 262, we find that: "The effect of the guaranty [of the Fifth and Fourteenth Amendments] is to inhibit the taking of one person's property and giving it to another, contrary to settled usages and modes of procedure, without notice and oppor-

tunity for a hearing. *An attempt by statute to work such a change of ownership would be a glaring violation of this guaranty and could not be defended as an exercise of the police power.* (Italics added.)

"The protection extends to rights, in the broadest sense of the term. In the determination of whether the requirement has been observed, regard must be had to substance rather than to form, for the mere form of the proceeding cannot convert the process used into due process of law, if the necessary result is illegally to deprive a person of his property without compensation." See *Ochoa* v. *Hernandez y Morales,* 230 U.S. 139 [33 S.Ct. 1033, 57 L.Ed. 1427] ; *Curry* v. *McCanless,* 307 U.S. 357 [59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162]. Also see 16 Corpus Juris Secundum, section 602, page 1205, stating that "a denial of due process of law results from any statute, whether state or federal, which takes away any of the essential attributes of private property, . . ." (citing *Ferris* v. *Wilbur,* 27 F.2d 262) ; and 12 C.J., §§ 486, 487, pp. 956, 957.

In *United States* v. *Cohen Grocery Co.,* 255 U.S. 81 [41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045], it was said that a state of war could not suspend or change the operation upon the power of Congress of the guarantees and limitations of the Fifth Amendment (with citations). Also see *Hamilton* v. *Kentucky Distilleries & W. Co.,* 251 U.S. 146, 155 [40 S.Ct. 106, 64 L.Ed. 194, 199]. The same rule is stated in *Darlington* v. *Board of Councilmen,* 282 Ky. 778 [140 S.W.2d 392, 396] (citing the Cohen case, *supra*), and in *Henderson* v. *Bryan,* 46 F.Supp. 682, 684, and *Schatte* v. *International Alliance, etc.,* 70 F. Supp. 1008, 1010 (decided by the same court that decided the Barton case, *infra*).

Appellants cite numerous cases which, they contend, sustain their position; but, with one exception, none of them involved divestiture of vested rights in community property. Assuming, but not deciding, the correctness of such decisions, they do not determine the issues in this case, nor is it necessary herein to determine to what extent the Congress could, under its limited powers, exercise control over the proceeds of national service life insurance policies prior to their receipt by the beneficiaries. The exception above mentioned is *Barton* v. *United States,* 75 F.Supp. 703, in which a widow of a deceased veteran applied to the Administrator of Veterans' Affairs to pay to her a one-half interest in the portion of the proceeds of an insurance policy which had resulted from the payment

of premiums out of community funds of the spouses. The claim was disallowed and payments were made to the named beneficiary, decedent's mother. It may be conceded without affecting the conclusion in the case before us, that the Administrator properly so acted pursuant to the terms of the policy, which was a contract between the United States and the insured, and that the trial court properly concurred in his decision. The Barton decision is not, of course, conclusive upon this court; and we think it is clearly distinguishable insofar as the necessities of that case were determined. But if, as some of the language of the opinion indicates, that court decided that because of the provisions of section 454a, *supra*, the Congress intended to and did attempt to provide that where premiums on a national service life insurance policy are paid for out of the community property, in which, under the laws of California, a wife has a vested interest, it must follow that the widow of decedent may be divested of her community property right by the action of the husband in using such funds for payment of premiums on such insurance without her knowledge or consent, and by naming another than the wife as beneficiary deprive the surviving widow of her vested rights and render it impossible for her to enforce her rights against the beneficiaries after their receipt of the proceeds of the policy, then we must respectfully disagree with the Barton case.

Also see *Bostrom* v. *Bostrom*, 60 N.D. 792 [236 N.W. 732]; *Lewis* v. *Lewis*, 34 Cal.App.2d 422 [93 P.2d 850]; *Baker* v. *Tulsa Building & Loan Assn.*, 179 Okla. 432 [66 P.2d 45]; *Miller* v. *McKenna*, 23 Cal.2d 774, 783 [147 P.2d 531].

The one remaining point on this appeal is whether the trial court erred in allowing the plaintiff one-half the value of the automobile at the time it was transferred to appellants, or whether plaintiff was entitled to one-half of the $1,080 received from sale of same after the death of Leonard Wissner. The trial court found that the value of the car at the time it was transferred to defendants was $1,600, and awarded plaintiff judgment for one-half of the value thereof. That the said automobile was community property cannot be questioned, since it was paid for with the community earnings of the spouses after their marriage in 1930, including the earnings of plaintiff who made the final payments out of her own earnings after her husband entered the service. She testified that she did not know of the transfer until after the death of her husband, after which

she made demand therefor. The trial court found that the transfer was without consideration, and the evidence sustains that finding. It might be questioned, in view of the evidence, whether the decedent ever intended to transfer the ownership of the automobile to his parents at all. However, they assert ownership, and it may be presumed that such ownership was acquired when the car and pink slip were delivered to them, as there is nothing to show a later acquisition of title. The trial court, then, may well have concluded that it was transferred to them at that time, and when its value was $1,600. So determining, its finding that plaintiff is entitled to one-half of its value at that time is supported by the record. Defendants knew that it was the community property of plaintiff and their son, and they may be said to have converted it to their own use at the time of the transfer. Section 3336 of the Civil Code thus became applicable as to the amount of recovery from the convertor, to wit, the value of the property at the time of conversion. And if defendants, having notice of plaintiff's rights, as they had, chose to sell the vehicle, they must respond to the owner for its value, regardless of the price at which they chose to sell it. (*A. Meister & Sons Co.* v. *Harrison*, 56 Cal.App. 679, 681 [206 P. 106].)

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied February 11, 1949, and appellants' petition for a hearing by the Supreme Court was denied March 21, 1949. Schauer, J., voted for a hearing.