[S. F. No. 19782.   In Bank.   Sept. 26, 1958.]

Estate of ELSIE M. ALLIE, Deceased.   MYRTLE MARQUARDT et al., Appellants, v. MITCHELL S. CASH, Respondent.

Emmet B. Hayes for Appellants.

Cooper, White & Cooper, Sheldon G. Cooper and John E. Schaeffer for Respondent.

SCHAUER, J.—From a decree establishing heirship with respect to certain property of the estate of an intestate deceased widow and determining that her surviving brother and sole heir at law is entitled to distribution of all of such property, the surviving sisters of the previously deceased husband of the widow appeal. The issue to be decided is whether the origin of such property, as between the widow and her husband, should be deemed to be community or separate, if either, and, therefore, which of sections 225, 228 and 229 of the Probate Code controls the intestate succession thereto. For the reasons hereinafter articulated we conclude that the property should be treated as community for the purposes of intestate succession, that it should therefore go one-half to the relatives of the decedent and one-half to those of the predeceased husband, and that the decree must be reversed.

The appeal is presented on a settled statement in lieu of clerk's and reporter's transcripts. (Rule 7(b), Rules on Appeal.) From such statement it appears that in March, 1956, Joseph Allie died intestate and without issue. The beneficiary under his National Service Life Insurance policy was his widow Elsie, decedent herein. The following month Elsie died intestate and without issue. The proceeds of the policy were paid into her estate, and constitute the property here in controversy. Elsie's sole heir at law is her brother, respondent herein. The sole surviving heirs at law of Joseph are appellants, his sisters.

Section 225 of the Probate Code (see also section 220) provides that the separate property of a person who dies intestate, leaving neither issue nor spouse, goes to his parent or parents if living and if not to his brothers and sisters and to the descendants of deceased brothers and sisters.

Section 228 provides that ''If the decedent leaves neither spouse nor issue, and the estate . . . was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise or bequest . . ., such property goes in equal shares to the children of the deceased spouse and their descendants . . ., and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or . . . to the survivor, or if both

are dead in equal shares to the brothers and sisters of the decedent . . ., and the other half goes to the parents of the deceased spouse in equal shares, or . . . to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse. . . ."

Section 229 provides that "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest . . . such property goes" to the heirs at law of the previously deceased spouse.

The settled statement declares that decedent and Joseph were married in 1926, and that "There is no evidence other than that the assets of the estate were acquired during the marriage by the earnings of the parties. The premiums on the insurance policies[1] were paid during the marriage. There is no evidence that the payments thereon were made from funds other than community property of the parties."

The trial court, in reliance upon *Wissner* v. *Wissner* (1950), 338 U.S. 655, 658-661 [70 S.Ct. 398, 94 L.Ed. 424], declared that "the community character" of a National Service Life Insurance policy on the life of the husband "cannot affect the distribution of its proceeds," and that therefore section 228, which treats of intestate succession to "community property of the decedent and a previously deceased spouse," cannot apply. The court further concluded that the policy proceeds should be distributed entirely to the widow's heir at law, respondent herein, seemingly upon the theory that they constituted separate property of the widow rather than originating in either community property or the predeceased husband's separate property. This appeal by the sisters of the predeceased husband followed.

In resolving the issue it must be borne in mind that sections 228 and 229 of the Probate Code refer to the status of property as being either community or separate as of a time when both spouses were living; i.e., prior to the death of the "previously deceased spouse" mentioned in the two sections. (See *Estate of Reizian* (1951), 36 Cal.2d 746, 749-750 [1, 2] [227 P.2d 249]; *Estate of Adams* (1955), 132 Cal.App.2d 190, 203 [8] [282 P.2d 190].) Further, the rule has been declared that the underlying principle of sections 228 and

---

[1]Only the National Service Life Insurance policy is involved on this appeal.

229 is that the origin or source of acquisition of the property should and does control its distribution. (*Estate of Reizian* (1951), *supra*; *Estate of Abdale* (1946), 28 Cal.2d 587, 590-592 [170 P.2d 918] ; *Estate of Rattray* (1939), 13 Cal.2d 702, 713-714 [91 P.2d 1042].) Thus, in the Abdale case it was held that separate real property of the husband which he had transferred to himself and his wife as joint tenants, and of which he again became sole owner upon her death, should be distributed under section 225 of the Probate Code as being, and having originated wholly from, separate property of the husband, rather than one-half thereof being distributed under section 229 as the separate property of a predeceased spouse (i.e., the wife). (See also *Sears* v. *Rule* (1945), 27 Cal.2d 131, 141-143 [163 P.2d 443].) Consequently the question to be determined here is whether for the purposes of administering the pertinent succession statute the origin of the property (which actually came from the United States government) may and should be treated as (1) community, (2) separate property of the "previously deceased spouse" (here, the husband on whose life the insurance policy was issued), or (3) separate property of the surviving spouse (here, the decedent wife).

■ The general rule is that where premiums on a life insurance policy issued on the life of one of the spouses were paid with community funds, the policy is community property (*Grimm* v. *Grimm* (1945), 26 Cal.2d 173, 175 [157 P.2d 841], and cases there cited), and the policy proceeds retain their community character for purposes of intestate succession, notwithstanding the fact that such proceeds are paid only after dissolution of the community by death. (*Estate of Castagnola* (1924), 68 Cal.App. 732, 737 [5] [230 P. 188].) ■ However, a National Service Life Insurance policy is issued pursuant to federal law and the principal consideration for it is the relationship between the policyholder and the government. Premiums, when paid at all, are at a rate far less than the rates normally charged by privately owned insurance companies, and the character of the funds from which premiums are paid cannot affect the character of the rights of the insured with respect to the benefits of the policy. In *Wissner* v. *Wissner* (1950), *supra*, 338 U.S. 655, the United States Supreme Court dealt with a case in which the policyholder had named his mother as beneficiary. Such premiums as accrued were assumed to have been paid with community funds, and upon the insured's death his widow sought to

recover one-half of the proceeds of the policy. The California courts had held (*Wissner* v. *Wissner* (1949), 89 Cal.App.2d 759, 764-770 [2] [201 P.2d 837] ; hearing by Supreme Court denied by a divided court) that inasmuch as premiums paid by the insured "were paid from community funds; and . . . plaintiff [wife] had a vested interest in one-half of such community property" (p. 764), the "federal government had no power to provide, as it is contended it did in section 454a [of the World War Veterans' Relief Act, 38 U.S.C.A.] that payments made to a beneficiary of a national service life insurance policy shall be exempt from the claims of the widow of the deceased insured to the right vested in her under the laws of this state to one-half of such payments *after* their receipt by the beneficiary" (p. 767), and that any such provision would constitute the taking of private property without due process of law, in violation of the Fifth Amendment of the United States Constitution. Judgment awarding the widow one-half the proceeds of the policy, which she had sued to recover from the beneficiary, was affirmed by the California court.

In reversing the California courts the Supreme Court of the United States pointed out that under that court's view of the case it was "unnecessary to decide whether California is entitled to call army pay community property" (n. 2, p. 657 of 338 U.S.) ; that the widow made no claim for the premiums paid on the policy but sought the proceeds of the insurance; that the National Service Life Insurance Act provides, in section 802 (g) of 38 U.S.C., that the insured under such a policy "shall have the right to designate the beneficiary or beneficiaries . . . [within a designated class], and shall . . . at all times have the right to change the beneficiary . . ." The court further declares that (pp. 658-659 of 338 U.S.) "Pursuant to the congressional command, the Government contracted to pay the insurance to the insured's choice," and that to award a share of the proceeds to the widow would frustrate "the deliberate purpose of Congress." Moreover, such an award would violate the provision of section 454a of 38 U.S.C. that payments to the named beneficiary "shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary . . ." Also, commented the court (pp. 660-661), "Congress in its desire to afford as much material protection as possible to its fighting force could wisely provide a plan of insurance

coverage. Possession of government insurance, payable to the relative of his choice, might well directly enhance the morale of the serviceman. The exemption provision is his guarantee of the . . . full performance of the contract to the exclusion of conflicting claims. The end is a legitimate one within the congressional powers over national defense, and the means are adapted to the chosen end. . . . And since the statute which made the insurance proceeds possible was explicit in announcing that the insured shall have the right to designate the recipient of the insurance, and that 'No person shall have a vested right' to those proceeds, 38 U.S.C. § 802 (i), appellee could not, in law, contemplate their capture. The federal statute establishes the fund in issue, and forestalls the existence of any 'vested' right in the proceeds of federal insurance. Hence no constitutional question is presented. However 'vested' her right to the proceeds of nongovernmental insurance under California law, that rule cannot apply to this insurance.''

■ It is thus clear that the insured is fully protected and assured by federal law that the proceeds of his National Service Life Insurance policy (the fund which the ''federal statute establishes'') will be paid to the beneficiary of his choice and that the beneficiary is likewise protected in receiving and retaining such proceeds free from claims based either upon community property laws or principles or upon the origin or source of funds used to pay the policy premiums. We must then determine what law governs succession to the fund having the unique source here established.

In the first place we note that none of the parties involved in the present litigation seek to disturb, and the issues presented will not and do not involve, the full and complete protection of insured and beneficiary so established by the federal act and confirmed by the federal court in the Wissner decision. The wishes expressed by the insured have already been fully carried out by payment of the policy proceeds into the estate of his beneficiary (his wife, decedent herein), and if his beneficiary had left a valid last will and testament expressing her own wishes as to further distribution of such proceeds, those wishes would likewise be respected. The issues now before us involve, rather, the distribution of the policy proceeds from the estate of the insured's chosen beneficiary under the laws of intestate succession of California, as expressed in its Probate Code, which, of course, are invoked only when the beneficiary of the National Service Life Insur-

ance policy fails to make a valid testamentary disposition of the proceeds.

As already stated hereinabove, the settled statement on which this appeal is presented declares that premiums on the policy were paid during the marriage of the insured and decedent, and that there ·is no evidence other than that the assets of decedent's estate were acquired during the marriage by the earnings of the parties, and no evidence that the premium payments were made from funds other than community property of the parties. We are therefore persuaded that on this record we are not precluded from treating the insurance proceeds as having their origin or source in community property *solely for the purpose of intestate succession* under the laws of California (since, as mentioned hereinabove, the wishes of the insured have already been carried out, and the beneficiary has died without making her wishes known), and that to so treat them will violate neither the congressional purpose in enacting the National Service Life Insurance Act, the government contract entered into pursuant to that act, the right and desire of the insured serviceman that the policy proceeds go to the beneficiary of his choice (where they have already gone), or the privilege of the beneficiary to receive the insurance proceeds free and exempt from the claims of others (as they have actually been received in this case). (*Cf. Clark* v. *Allen* (1947), 331 U.S. 503, 508 [67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953].) Inasmuch as the beneficiary failed to herself dispose of the proceeds or to express her wishes concerning them, no right of insured or of beneficiary is defeated by applying to such proceeds the provisions of section 228 of the Probate Code, which sets forth the rules of intestate succession to property having its source in community property of a decedent and a previously deceased spouse. Rather, such treatment of the policy proceeds will subserve the legislative scheme, which this court has declared to be fair and reasonable, that where the intestate decedent leaves neither spouse nor issue and the predeceased spouse is also without issue, such property as was community in origin should be shared equally by the relatives of the predeceased spouse and those of the surviving spouse. (*Estate of Rattray* (1939), *supra,* 13 Cal.2d 713-715; see also *Estate of Abdale* (1946), *supra,* 28 Cal.2d 587, 590; *Estate of Perkins* (1943), 21 Cal.2d 561, 569-571 [134 P.2d 231].)

For the reasons above stated the decree.in the present case,

under which the property was distributed entirely to the surviving relative of the wife to the exclusion of relatives of the predeceased husband, is reversed, and the cause is remanded to the superior court with directions to enter a decree distributing the proceeds of the subject policy in accordance with the views hereinabove expressed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.