WARNS, J. pro tem.
 
 *
 

 The petitioner has appealed from a decree establishing heirship with respect to certain real property and three bank accounts of the estate of Lulu Hanson, the deceased widow of Oscar Hanson. Lulu Hanson died intestate, and the court declared the real property to be community property of the deceased widow and her predeceased husband, and ordered that the said real property be distributed one-half to Hilma Behlow, a sister and sole next of kin of the predeceased husband, and one-half to the brothers of the deceased widow, Lulu Hanson, her next of kin; and further decreed that the savings account in the Port Bragg Branch of the Bank of America National Trust and Savings Association was community property and likewise ordered that it be distributed one-half to petitioner, Hilma Behlow, and the remaining one-half to the surviving brothers of the decedent, Lulu Hanson; and further decreed that the savings account in the Mendocino Branch of the Bank of America, National Trust and Savings Association, and the savings account in the Coast National Bank, at Port Bragg, were the separate property of the predeceased husband and should be distributed to petitioner, Hilma Behlow.
 

 The issue to be decided is whether the real property in question and the savings account in the Port Bragg Branch of the Bank of America were in their origin the separate property of the predeceased husband and, if so, the effect of a decree of distribution in his estate decreeing that all of the property involved in the present proceeding was community. While that decree is conclusive as to the character of the property at the time of the husband’s death
 
 (Estate of Radovich,
 
 48 Cal.2d
 
 *34
 
 116, 120-121 [308 P.2d 14];
 
 Silveira
 
 v.
 
 Silveira,
 
 138 Cal.App.2d 698, 701 [292 P.2d 567]), we feel that it is not determinative of the question as to who was to succeed to the property upon the death of the widow.
 

 Section 228 of the Probate Code provides that: “If the decedent leaves neither spouse nor issue, and the estate, . . . was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise, or bequest, . . . , such property goes in equal shares to the children of the deceased spouse and their descendants . . . , and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or ... to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent . . . , and the other half goes to the parents of the deceased spouse in equal shares, or ... to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse ...”
 

 Section 229 provides that if the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise, or bequest such property goes to the heirs of the previously deceased spouse.
 

 It is conceded that the decedent, Lulu Hanson, died on October 28, 1955, intestate, and without leaving surviving issue or spouse; that her next of kin are four brothers; that at her death she was the widow of Oscar E. Hanson, who died January 16, 1953; and that petitioner, Hilma Behlow, is a sister and the sole next of kin of the predeceased husband.
 

 It is also conceded that the property on hand in the estate, as shown by the inventory and appraisal, consists of an undivided two-thirds interest in 70. acres of land located on the coast, near Caspar, referred to as the Hanson Ranch, and three savings bank accounts.
 

 The ranch belonged to Emma C. Hanson, mother of Hilma Behlow and Oscar E. Hanson. On the death of Emma C. Hanson in 1940 the ranch was distributed one-third to Hilma Behlow, one-third to Oscar E. Hanson and one-third to Walter Hanson.
 

 Later Osear E. Hanson received a deed of gift from Walter for Walter’s interest in the ranch.
 

 It is also conceded that Oscar E. Hanson married Lulu
 
 *35
 
 Amanda Johnson in 1923; that he was then 31 years of age; that prior to his marriage Oscar worked in the mill at Caspar; that prior to marriage he served two years in the United States Army in World War I; that upon the death of his mother, Emma 0. Hanson, in 1940, Oscar, with his wife, Lulu, moved upon the ranch and thereafter, until their death they devoted all of their time to the operation of the ranch.
 

 No conveyance or other disposition whatsoever of his interest in the ranch appears ever to have been made by Oscar in his lifetime to his wife, Lulu, or otherwise. However, the record shows that in the estate of Oscar E. Hanson, deceased, all of the decedent’s estate, including the ranch, was distributed to his widow, Lulu, as community property.
 

 The trial court held that the decree of distribution in the estate of Oscar E. Hanson, the predeceased husband, fixing the character of the property as “community” was controlling as to the ranch, and determined that the two-thirds interest in the ranch and the savings account in the Fort Bragg Branch of the Bank of America, were community property, to be distributed under section 228, one-half to petitioner and one-half to the four brothers of the decedent. It also determined, however, that the other two savings bank accounts were the separate property of the predeceased husband, Oscar, to be distributed to petitioner as sole heir under section 229 of the Probate Code.
 

 It is the position of the appellant that all the property in the present estate of Lulu Hanson, deceased, had its origin in the lifetime of Oscar and Lulu, as Oscar’s separate property, and that its character and origin, as Oscar’s separate property, are now controlling; that the decree of distribution in the estate of Oscar E. Hanson, deceased, characterizing the ranch as “community property” and distributing it to the widow, Lulu, is of no consequence whatever in the present proceeding.
 

 As said in
 
 Estate of Allie,
 
 50 Cal.2d 794, 797 [329 P.2d 903] : “In resolving the issue it must be borne in mind that sections 228 and 229 of the Probate Code refer to the status of property as being either community or separate as of a time when both spouses were living; i.e., prior to the death of the ‘previously deceased spouse’ mentioned in the two sections. (See
 
 Estate of Reizian
 
 (1951), 36 Cal.2d 746, 749-750 [1, 2] [227 P.2d 249];
 
 Estate of Adams
 
 (1955), 132 Cal.App.2d 190, 203 [8] [282 P.2d 190].) Further, the rule has been declared that the underlying principle of sections 228 and 229 is that the origin or source of acquisition of the prop
 
 *36
 
 erty should and does control its disposition.
 
 (Estate of Reizian
 
 (1951),
 
 supra; Estate of Abdale
 
 (1946), 28 Cal.2d 587, 590-592 [170 P.2d
 
 918]; Estate of Rattray
 
 (1939), 13 Cal.2d 702, 713-714 [91 P.2d 1042].) Thus, in the Abdale case, it was held that separate real property of the husband which he had transferred to himself and his wife as joint tenants, and of which he again became sole owner upon her death, should be distributed under section 225 of the Probate Code as being, and having originated wholly from, separate property of the husband, rather than one-half thereof being distributed under section 229 as the separate property of a predeceased spouse (i.e., the wife). (See also
 
 Sears
 
 v.
 
 Rule
 
 (1945), 27 Cal.2d 131, 141-143 [163 P.2d 443].)”
 

 In the instant case there is no dispute but that the two-thirds interest in the ranch, i.e., the real property, came to Oscar, the predeceased spouse, by inheritance from his mother and by a deed of gift from his brother as his separate property. Hence, applying the rules of law as stated in
 
 Estate of Allie, supra,
 
 and cases cited therein, holding that “the source of acquisition of the property should and does control its disposition” it follows that the real property here in issue should have been ordered distributed to the petitioner under the provisions of section 229 of the Probate Code.
 

 The trial court in its “Order for Findings” said:
 

 “Oscar Hanson and Lulu Johnson were married in 1923. At that time he was an employee of the Caspar Lumber Company and continued that employment to at least sometime in 1934. There is some evidence from which the inference could be drawn that he remained in the employ of the Lumber Company until about 1940. Lulu Hanson had no separate property or income, nor did she have any outside gainful employment.
 

 “Sometime during 1934, a brother of Oscar Hanson, who was living with his mother on her place, passed away, and she, herself, died December 1, 1940. There is no dispute that no later than the mother’s death, Oscar and Lulu moved to the mother’s place and remained there until their respective deaths, running sheep on the place.”
 

 Concerning the savings account in the Fort Bragg Branch of the Bank of America, National Trust and Savings Association, the trial court stated:
 

 “This account was started by a deposit of $92.00 on June 11, 1924, and deposits thereafter were made fairly regularly up to and including August, 1933, which together with the
 
 *37
 
 interest accumulation up to October 6, 1934, brought the balance to $1,975.93.
 

 “It is fairly inferable from the account up to the last mentioned date that these deposits were savings accumulated from Oscar’s wages. There were very few withdrawals.
 

 “From December 1, 1934, to August 19, 1941, there were a few deposits, other than interest, ranging from $80.00 to one of $303.21. During that time there were many withdrawals, usually in amounts from $20.00 to $40.00.
 

 “On September 15, 1941, there was a deposit of $1,201.28, and on September 29, a withdrawal of $1,000. From that time onward, there were intermittent deposits of large amounts as compared with the former deposits, usually in the summer months, most of which after August, 1944, can be directly traceable to sales of wool and sheep. The deposits continued with regularity up to the date of Oscar’s death. The withdrawals likewise continued, but the average amount of each withdrawal exceeded the average of the earlier ones. From the foregoing it is fairly inferable that the withdrawals were for family living expenses.
 

 “On December 1,1945, a deposit of $4,944.00 was made. On October 24, 1945, a deed from Oscar and Lulu to Lionell C. Dressell, et ux. conveying property acquired by Oscar on January 9, 1925, for $1,500.00 was recorded. This property, having been acquired after the marriage, is presumed to be community property (§164 C.C.) and this ‘presumption . . . can be overcome only by the production of clear and satisfactory proof that the property in question was the separate property of the husband. ’
 
 (Estate of
 
 Rolls, 193 Cal. 594, 597 [226 P. 608].) The burden of overcoming the presumption is on the one claiming it to be separate property.
 
 (Wilson
 
 v. Wilson, 76 Cal.App.2d 119, 126 [172 P.2d 568].) Here the opposing evidence is insufficient to overcome the presumption.
 

 “At Oscar’s .death, the balance in this account was $6,426.30. Thereafter, this account was transferred to the name of Lulu Hanson alone and occasional deposits were made at times and in amounts that, with the exception of interest and one of $1,570, were the proceeds of the sale of sheep and wool which, coming from community property, fall into that category. It is inferred that the $1,570 was the deposit of the Veterans’ Bonus distributed to Lulu as community property.
 

 “At Lulu’s death there remained in this account $5,185.22, and it is the contention of respondent Johnson that com
 
 *38
 
 munity and separate funds have been so inextricably intermingled that the balance should be held to be community property. This contention must be sustained.
 
 {Fountain
 
 v.
 
 Maxim,
 
 210 Cal. 48, 51 [290 P. 576];
 
 Falk
 
 v.
 
 Falk,
 
 48 Cal.App.2d 762, 767-768 [120 P.2d 714]), and the balance of this account held to be community property.”
 

 In accordance with its order for findings the court found:
 

 “The balance of the money in Savings Account No. 2435, Port Bragg Branch, Bank of America, N. T. & S. A., was the remainder of an earlier account, carried under a different number, at the death of said Oscar Hanson, in his name and that of Lulu Hanson as joint tenants and, upon his death, vested in her as the survivor; that in said earlier account the separate funds of said Oscar Hanson and the community funds of said joint tenants had been deposited and were so intermingled the quantum of each of said funds could not be determined; that said earlier account was the community property of said joint tenants.”
 

 There being substantial evidence to sustain such finding, this court is bound thereby.
 

 We need not discuss the two other savings bank accounts since the trial court held that they were in origin Oscar’s separate property and ordered that the balance in each of said accounts should be distributed to the petitioner, Hilma Behlow.
 

 The judgment is affirmed, except in so far as the real property is concerned. As to the real property, since it had its origin as the separate property of the predeceased husband, it should be distributed to the petitioner, Hilma Behlow, and therefore that portion of the judgment concerning the real property is reversed. Appellant to recover costs on appeal.
 

 Van Dyke, P. J., and Sehottky, J., concurred.
 

 *
 

 Assigned by Chairman, of Judicial Council.