[Civ. No. 23531.   First Dist., Div. One.   Feb. 6, 1967.]

JENNY THOEN, Plaintiff and Appellant, v. ROLONA THOEN, Defendant and Respondent.

Di Leonardo, Blake, Kelly, Aguilar & Leal, Michael di Leonardo and Theodore J. Biagini for Plaintiff and Appellant.

Lucas, Wyckoff, Miller, Stanley & Scott and Austin B. Comstock for Defendant and Respondent.

ELKINGTON, J.—This is an appeal from a judgment of dismissal entered upon the sustaining, without leave to amend, of a general demurrer to plaintiff's first amended complaint.

Plaintiff Jenny Thoen (Jenny) was a former wife of Olaf Thoen (Olaf), now deceased. Defendant Rolona Thoen (Rolona) married Olaf following his divorce from Jenny.

The first amended complaint in its material parts discloses allegations substantially as now set forth. While he was married to Jenny, Olaf held a National Service Life Insurance (which we shall call N.S.L.I.) policy in the face amount of $10,000. The premiums were withheld from Olaf's Navy pay and later from his Navy retirement pay. The policy was community property of Jenny and Olaf. Jenny and Olaf had entered into an oral property settlement agreement which provided, among other things, that Olaf would at all times maintain the policy for the sole benefit of Jenny. Thereafter, and on February 6, 1956, Jenny obtained an interlocutory decree of divorce from Olaf which in part decreed "that plaintiff [Jenny] be, and she is hereby, awarded all of the community property of the parties hereto" and that defendant (Olaf) "be enjoined and restrained from . . . changing the beneficiary of, assigning, or altering the terms and conditions of the United States government insurance issued on the life of the defendant." A final decree of divorce dated May 2, 1957, decreed that wherein the "interlocutory judgment relates to the property of the parties hereto, said property be and the same is hereby assigned in accordance with the terms thereof to the parties therein declared to be entitled thereto, . . ." Following the final decree (and apparently after his marriage to Rolona) Olaf nevertheless changed the policy's beneficiary by naming Rolona as such beneficiary. This change was without Jenny's knowledge or consent, and it deprived her "of a valuable and vested property interest" in the policy. Thereafter, while the policy was in effect, Olaf died, whereupon Rolona made application for, and collected,

356

the policy's benefits. No contention of actual fraud or wrong-doing on Rolona's part is made.[1]

On the basis of the foregoing recitals Jenny prayed for a judgment and declaration "that defendant Rolona Thoen is a constructive trustee for the benefit of plaintiff in regard to said funds [benefits of the policy]. . . ."

Jenny's contentions on this appeal are stated as follows: "Olaf's act in changing the beneficiary of the NSLI policy was in direct derogation of the Court order and constituted a fraud upon Jenny which should be rectified by the Court"; and "Although there is no allegation of wrongdoing on Rolona's part, she can nonetheless be held a constructive trustee for the benefit of Jenny."

▆ It is the general rule in California that when premiums on a life insurance policy issued on the life of one spouse are paid with community funds the policy (or at least its benefits or proceeds) is community property. (See *Grimm* v. *Grimm* (1945) 26 Cal.2d 173, 175 [157 P.2d 841], and cases there cited.) If the general rule is here to be applied Jenny's first amended complaint probably does state a cause of action.

▆ But the rights of the parties here are derived from the federal statutes concerning National Service Life Insurance. (38 U.S.C.A., § 701 et seq.; former 38 U.S.C.A., § 801 et seq.)

The statutes provide that the "insured shall have the right to designate the beneficiary or beneficiaries of insurance . . . and shall . . . at all times have the right to change the beneficiary or beneficiaries. . . ." (38 U.S.C.A., § 717(a); former 38 U.S.C.A., § 802(g).)

It has been held that a California widow can have no community property (or other) claim for benefits under a N.S.L.I. policy as against the beneficiary named.

The leading case on this question is *Wissner* v. *Wissner* (1950) 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398]. There a widow endeavored to assert community property rights against the beneficiary of a N.S.L.I. policy. She had been successful in California's courts. (See *Wissner* v. *Wissner* (1949) 89 Cal.App.2d 759 [201 P.2d 837].) The United States Supreme Court in reversing, said (pp. 658-659) : "The National Service Life Insurance Act is the congressional mode of

---

[1]Although the first amended complaint alleges that the court in the divorce action, decreed the policy to be community property, a study of the interlocutory and final decrees, which are incorporated in the first amended complaint, indicates that such a determination was not made.

affording a uniform and comprehensive system of life insurance for members and veterans of the armed forces of the United States. A liberal policy toward the serviceman and his named beneficiary is everywhere evident in the comprehensive statutory plan. Premiums are very low and are waived during the insured's disability; costs of administration are borne by the United States; liabilities may be discharged out of congressional appropriations.

"The controlling section of the Act provides that the insured 'shall have the right to designate the beneficiary or beneficiaries of the insurance [within a designated class], . . . and shall . . . at all times have the right to change the beneficiary or beneficiaries. . . .' [Citation.] Thus Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other. Pursuant to the congressional command, the Government contracted to pay the insurance to the insured's choice. . . . Whether directed at the very money received from the Government or an equivalent amount, the judgment below nullifies the soldier's choice and frustrates the deliberate purpose of Congress. . . .

" . . . . . . . . . .

"Further, Congress has provided in the National Service Life Insurance Act that the chosen beneficiary of the life insurance policy shall be, during life, the sole owner of the proceeds. . . . Certainly Congress in its desire to afford as much material protection as possible to its fighting force could wisely provide a plan of insurance coverage. Possession of government insurance, payable to the relative of his choice, might well directly enhance the morale of the serviceman. The exemption provision is his guarantee of the complete and full performance of the contract to the exclusion of conflicting claims. The end is a legitimate one within the congressional powers over national defense, and the means are adapted to the chosen end. . . . And since the statute which made the insurance proceeds possible was explicit in announcing that the insured shall have the right to designate the recipient of the insurance, and that 'No person shall have a vested right' to those proceeds, 38 U.S.C. § 802 (i), appellee could not, in law, contemplate their capture. The federal statute establishes the fund in issue, and forestalls the existence of any 'vested' right in the proceeds of federal insurance. Hence no constitutional question is presented. However 'vested' her right to the

proceeds of nongovernmental insurance under California law, that rule cannot apply to this insurance. [Citations.]"

*Wissner, supra,* has been consistently followed by the courts of this state. ▮ In *Estate of Allie* (1958) 50 Cal.2d 794, 800 [329 P.2d 903], California's Supreme Court stated: "It is clear that the insured is fully protected and assured by federal law that the proceeds of his National Service Life Insurance policy (the fund which the 'federal statute establishes') will be paid to the beneficiary of his choice and that the beneficiary is likewise protected in receiving and retaining such proceeds free from claims based either upon community property laws or principles or upon the origin or source of funds used to pay the policy premiums. . . ." (See also *Sehrt* v. *Sehrt* (1960) 179 Cal.App.2d 167 [3 Cal.Rptr. 555]; *Carballo* v. *McFann* (1950) 101 Cal.App.2d 93 [224 P.2d 902]; *Kauffman* v. *Kauffman* (1949) 93 Cal.App.2d 808 [210 P.2d 29].)

Jenny contends however that the rule announced by *Wissner* and followed by this state does not apply in cases such as the one before us, where the circumstances manifest fraud or a breach of trust by the husband.[2] She relies on *Free* v. *Bland* (1963) 369 U.S. 663 [8 L.Ed.2d 180, 82 S.Ct. 1089] and *Yiatchos* v. *Yiatchos* (1964) 376 U.S. 306 [11 L.Ed.2d 724, 84 S.Ct. 742]. These cases announce as a reason for conferring the right of survivorship on the surviving named co-owner of savings bonds (as against community and other claims of title) that "The success of the management of the national debt depends to a significant measure upon the success of the sale of savings bonds. The Treasury is authorized to make the bonds attractive to savers and investors. One of the inducements selected by the Treasury is the survivorship provision, a convenient method of avoiding complicated probate proceedings." (*Free* v. *Bland, supra,* p. 669; see also *Yiatchos* v. *Yiatchos, supra,* p. 307.) But these considerations and the pertinent Treasury regulations, the court in *Free* (p. 670) held, "are not intended to be a shield for fraud, and relief would be available in a case where the circumstances manifest fraud or a breach of trust tantamount thereto on the part of a husband while acting in his capacity as manager of the general community property."

However, the court in *Free* distinguished between the

---

[2]It might properly be noted that *Wissner, supra,* 338 U.S. 655, 89 Cal. App.2d 759, as well as *Kauffman* v. *Kauffman, supra,* 93 Cal.App.2d 808, concerned what might be called a breach of trust by the husband.

strong federal policy announced in *Wissner* and that declared by *Free* and *Yiatchos*. ▊ It stated (p. 670) that as to *Wissner*: ". . . the Congress made clear its intent to allow a serviceman to select the beneficiary of his own government life insurance policy regardless of state law, *even when it was likely that the husband intended to deprive his wife of a right to share in his life insurance proceeds, a right guaranteed by state law. But the regulations governing savings bonds do not go that far.*" (Italics added.)

We must hold that the rule announced by the United States Supreme Court in *Wissner* v. *Wissner, supra,* 338 U.S. 655, controls as to the issue before us on this appeal.

The judgment of the court below is affirmed.

Molinari, P. J., and Sims, J., concurred.