BRIDGET TULLY vs. LUKE TULLY.

Middlesex.   March 23, 1893. — May 17, 1893.

Present: FIELD, C. J., ALLEN, MORTON, & LATHROP, JJ.

*Separate Maintenance — Husband and Wife — Pension.*

Under the Pub. Sts. c. 147, § 33, the Probate Court may properly pass an order
requiring a man to contribute towards the support of his wife, although his
only means of complying with the order are derived from a pension granted to
him by the United States.

PETITION to the Probate Court, under Pub. Sts. c. 147, § 33,
alleging that the petitioner was the wife of Luke Tully; that
he failed, without just cause, to furnish suitable support for
her, and had wilfully deserted her; and praying that the court
would prohibit the husband from imposing any restraint on her
personal liberty for such time as the court should direct, or until
the further order of the court, and would make such further order
as it deemed expedient concerning her support and maintenance.

On this petition the judge of probate ordered that the husband
be prohibited from imposing any restraint on the personal liberty
of the petitioner; and that he pay the petitioner for the support
of herself the sum of twenty-five dollars on the first day of Jan-
uary, 1891, and the sum of eighteen dollars on the first day of
each subsequent month until the further order of the court.

The case was submitted, on appeal, to the Superior Court,
upon agreed facts, in substance as follows.

The respondent and the petitioner were husband and wife, and
lived together in Lowell until about March, 1885, when the re-
spondent wilfully deserted the petitioner, and enlisted in the navy
of the United States for a term of three years. While in the navy
the respondent became partially blind, and was discharged there-
from about July, 1886. He then returned to Lowell, and went
to live with his wife. They continued to reside together until
November, 1886, when the petitioner, being unable properly to
care and provide for the respondent, who had become totally
blind, caused him to be sent to the poor farm in Lowell, where
he remained until some time in March, 1887, when he again went

to live with the petitioner, occasionally performing labor, until about April, 1888, when the petitioner, being unable properly to care and provide for him, again sent him to the poor farm. The respondent remained at the poor farm until December, 1888, when he was taken out by his brother, who, with the assistance of a sister, cared for him up to the time of the petition and trial in the Probate Court.

After the respondent was discharged from the service of the United States on account of disability, he made application for a pension, which was granted on or about May 1, 1890, the respondent receiving about $2,800 in a gross sum, and was further given a pension of $72 per month.

All of the $2,800 except $250 was expended by the respondent in payment of board, clothing, and in gifts to his brothers and sisters, and the only sum of money the respondent had at the time of the trial was the $250, which he had in his own personal custody and control, and was entitled, prospectively, to a pension of $72 per month, payable quarterly; and the respondent had no other means or property than as above set forth.

The respondent was, at the time of the trial, totally blind, and unable to perform manual labor of any kind, and required constant care and attention. The petitioner is unable to work steadily on account of sickness, and has no means or property for her support other than is earned by her personal labor and services.

The Superior Court affirmed the decree of the Probate Court; and the respondent appealed to this court.

*J. J. Hogan & W. A. Hogan,* for the respondent.

*N. D. Pratt & E. B. Quinn,* for the complainant.

ALLEN, J. The only question is whether, assuming all else in favor of the petitioner, her petition should be dismissed for the reason that the respondent's only means for complying with the order of the court are from money which he has received or may hereafter receive for a pension granted by the general government. It appears that on or about May 1, 1890, he received about $2,800, in a gross sum, all of which he expended or gave away within less than twelve months, except $250, which he had remaining in his own personal custody and control. It has been held that pension money, after being actually received

by the pensioner, is not entitled to exemption from legal process. *Kellogg* v. *Waite*, 12 Allen, 529. *Spelman* v. *Aldrich*, 126 Mass. 113. In this case, the proceedings are not directed to the seizure of any specific money, and no question is before us as to the manner in which the order of the court can or should be enforced. The order of the court was for the payment of twenty-five dollars on a certain date, and eighteen dollars on the first day of every month thereafter. Such order might properly be passed under Pub. Sts. c. 147, § 33, although the only means of the respondent were derived from his pension. Pension money is designed in part to enable the pensioner to support his wife and family, and the statute of the United States, Rev. Sts. § 4747, should not be strained to enable him to avoid this duty.                              *Decree affirmed.*