## WISSNER ET AL. v. WISSNER.

No. 119.   Argued December 6–7, 1949.—Decided February 6, 1950.

*Carlos J. Badger* argued the cause for appellants. With him on the brief were *W. Coburn Cook* and *Vernon F. Gant*.

*Leslie A. Cleary* argued the cause for appellee. With him on the brief was *William Zeff*.

By special leave of Court, *Morton Hollander* argued the cause for the United States, as *amicus curiae,* urging reversal. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison* and *Paul A. Sweeney*.

MR. JUSTICE CLARK delivered the opinion of the Court.

We are to determine whether the California community property law, as applied in this case, conflicts with certain provisions of the National Service Life Insurance Act of 1940; [1] and if so, whether the federal law is consistent with the Fifth Amendment to the Constitution of the United States. The cause is here on appeal from the final judgment of a California District Court of Appeal, the Supreme Court of California having denied a hearing. Reading the opinion below as a decision that the federal statute was unconstitutional, we noted probable jurisdiction. 28 U. S. C. § 1257 (1).

The material facts are not in dispute. Appellants are the parents, and appellee the widow, of Major Leonard O. Wissner, who died in India in 1945 in the service of the

---

[1] 54 Stat. 1008, as amended, 38 U. S. C. § 801 *et seq.* Amendments added in 1946, 60 Stat. 781, do not concern us here.

United States Army. He had enlisted in the Army in November 1942 and in January 1943 subscribed to a National Service Life Insurance policy in the principal sum of $10,000, which policy was in effect at the date of his death. The opinion below indicates that the decedent and appellee were estranged at the time he entered the Army or shortly thereafter. In January 1943 he requested his attorney to "get an insurance policy away" from appellee. After six months in the service decedent stopped the allotment to his wife, and in September 1943 expressed the wish that he "could find some way of forcing plaintiff to a settlement and a divorce." It is not surprising, therefore, that, without the knowledge or consent of his wife, the Major named his mother principal and his father contingent beneficiary under his National Service Life Insurance policy. Since his death the United States Veterans' Administration has been paying his mother the proceeds of the policy in monthly installments.

In 1947 the Major's widow brought action against the appellants in the Superior Court for Stanislaus County, State of California, alleging that under California community property law she was entitled to one-half the proceeds of the policy. Appellants answered that their designation as beneficiaries was "final and conclusive as against any claimed rights" of appellee. The court found that the decedent and his widow had been married in 1930, and until the date of Major Wissner's death had been legally domiciled there and subject to the state's community property laws. Major Wissner's army pay, which was held to be community property under California law,[2] was the source of the premiums paid on the policy.

---

[2] We assume the correctness of the lower court's statement of state law. See also *French* v. *French,* 17 Cal. 2d 775, 112 P. 2d 235 (1941). The view we take of this case makes it unnecessary to decide whether California is entitled to call army pay community property.

But no claim was made for the premiums; the widow sought the proceeds of the insurance. The court concluded that, consistent with California law in the ordinary insurance case, the proceeds of this policy "were and are the community property" of the widow and the decedent, and entered judgment for appellee for one-half the amount of payments already received, plus interest, and required appellants to pay appellee one-half of all future payments "immediately upon the receipt thereof" by appellees or either thereof. The District Court of Appeal affirmed, 89 Cal. App. 2d 759, 201 P. 2d 837 (1949), holding that appellee had a "vested right" to the insurance proceeds, and the Supreme Court of California denied a hearing, one judge dissenting.

We are of the opinion that the decision below was incorrect. The National Service Life Insurance Act is the congressional mode of affording a uniform and comprehensive system of life insurance for members and veterans of the armed forces of the United States. A liberal policy toward the serviceman and his named beneficiary is everywhere evident in the comprehensive statutory plan. Premiums are very low and are waived during the insured's disability; costs of administration are borne by the United States; liabilities may be discharged out of congressional appropriations.

The controlling section of the Act provides that the insured "shall have the right to designate the beneficiary or beneficiaries of the insurance [within a designated class], . . . and shall . . . at all times have the right to change the beneficiary or beneficiaries . . . ." 38 U. S. C. § 802 (g). Thus Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other. Pursuant to the congressional command, the Government contracted to pay the insurance to the insured's choice. He chose his mother. It is plain to us that the judgment of the lower court, as

to one-half of the proceeds, substitutes the widow for the mother, who was the beneficiary Congress directed shall receive the insurance money. We do not share appellee's discovery of congressional purpose that widows in community property states participate in the payments under the policy, contrary to the express direction of the insured. Whether directed at the very money received from the Government or an equivalent amount, the judgment below nullifies the soldier's choice and frustrates the deliberate purpose of Congress. It cannot stand.

The judgment under review has a further deficiency so far as it ordered the diversion of future payments as soon as they are paid by the Government to the mother. At least in this respect, the very payments received under the policy are to be "seized," in effect, by the judgment below. This is in flat conflict with the exemption provision contained in 38 U. S. C. § 454a, made a part of this Act by 38 U. S. C. § 816: Payments to the named beneficiary "shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. . . ."

We recognize that some courts have ruled that this and similar exemptions relating to pensions and veterans' relief do not apply when alimony or the support of wife or children is in issue. See *Schlaefer* v. *Schlaefer,* 71 App. D. C. 350, 112 F. 2d 177 (1940); *Tully* v. *Tully,* 159 Mass. 91, 34 N. E. 79 (1893); *Hodson* v. *New York City Employees' Retirement System,* 243 App. Div. 480, 278 N. Y. Supp. 16 (1935); *In re Guardianship of Bagnall,* 238 Iowa 905, 29 N. W. 2d 597 (1947), and cases therein cited. But cf. *Brewer* v. *Brewer,* 19 Tenn. App. 209, 239–241, 84 S. W. 2d 1022, 1040 (1933). We shall not attempt to epitomize a legal system at least as ancient as the cus-

toms of the Visigoths,[3] but we must note that the community property principle rests upon something more than the moral obligation of supporting spouse and children: the business relationship of man and wife for their mutual monetary profit. See de Funiak, Community Property, § 11 (1943). Venerable and worthy as this community is, it is not, we think, as likely to justify an exception to the congressional language as specific judicial recognition of particular needs, in the alimony and support cases. Our view of those cases, whatever it may be, is irrelevant here.[4] Further, Congress has provided in the National Service Life Insurance Act that the chosen beneficiary of the life insurance policy shall be, during life, the sole owner of the proceeds.

The constitutionality of the congressional mandate above expounded need not detain us long. Certainly Congress in its desire to afford as much material protection as possible to its fighting force could wisely provide a plan of insurance coverage. Possession of government insurance, payable to the relative of his choice, might well directly enhance the morale of the serviceman. The exemption provision is his guarantee of the complete and full performance of the contract to the exclusion of conflicting claims. The end is a legitimate one within

---

[3] See Lobingier, An Historical Introduction to Community Property Law, 8 Nat. Univ. L. Rev. (No. 2), p. 45 (1928); de Funiak, Community Property, c. II (1943).

[4] There are, of course, support aspects to the community property principle, and in some cases they may be of considerable importance. Likewise alimony may not be limited to the amount essential to support the divorced spouse. But we do not think the Congress would have intended decision to turn on factual variations in the spouse's need. If there is a distinction to be drawn, we think it must be based upon a generalization as to the dominating characteristics of a particular class of cases—alimony cases, support cases, community property cases. The alimony cases have uniformly been decided on that basis.

the congressional powers over national defense, and the means are adapted to the chosen end. The Act is valid. *McCulloch* v. *Maryland,* 4 Wheat. 316, 421 (1819). And since the statute which made the insurance proceeds possible was explicit in announcing that the insured shall have the right to designate the recipient of the insurance, and that "No person shall have a vested right" to those proceeds, 38 U. S. C. § 802 (i), appellee could not, in law, contemplate their capture. The federal statute establishes the fund in issue, and forestalls the existence of any "vested" right in the proceeds of federal insurance. Hence no constitutional question is presented. However "vested" her right to the proceeds of nongovernmental insurance under California law, that rule cannot apply to this insurance. Compare *W. B. Worthen Co.* v. *Thomas,* 292 U. S. 426 (1934); *Lynch* v. *United States,* 292 U. S. 571 (1934). See *Hines* v. *Lowrey,* 305 U. S. 85 (1938); *Norman* v. *Baltimore & Ohio R. Co.,* 294 U. S. 240 (1935); *Ruddy* v. *Rossi,* 248 U. S. 104 (1918).

The judgment below is

*Reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE MINTON, dissenting.

MR. JUSTICE FRANKFURTER, MR. JUSTICE JACKSON, and I are unable to agree with the majority in this case. The husband's earnings are community property under § 161a, California Civil Code. The wife has a vested interest in one-half of such earnings. *United States* v. *Malcolm,* 282 U. S. 792; *Bank of America* v. *Mantz,* 4 Cal. 2d 322, 49 P. 2d 279; *Cooke* v. *Cooke,* 65 Cal. App. 2d 260, 150 P. 2d 514.

If the premiums on a policy in a private insurance company had been paid out of community property without

the wife's consent, the wife could claim her proportionate share of the insurance. *Grimm* v. *Grimm,* 26 Cal. 2d 173, 157 P. 2d 841; *Cooke* v. *Cooke, supra; Bazzell* v. *Endriss,* 41 Cal. App. 2d 463, 107 P. 2d 49; *Mundt* v. *Connecticut General Life Ins. Co.,* 35 Cal. App. 2d 416, 95 P. 2d 966.[1]

It is claimed that the exemption provision of the federal statute prevents the same rule from applying here. This provision, 49 Stat. 609, 38 U. S. C. § 454a, provides:

> "Payments of benefits due or to become due . . . shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

What did Congress contemplate by the enactment of this provision? I think the statute presupposes that the beneficiary is the undisputed owner of the proceeds, and that a creditor has sought to reach the fund on an independent claim. Under those circumstances the remedy is denied, for the statute immunizes the fund from levy or attachment. That is not the case before us. The nature of this dispute is a claim by the wife that she is the *owner* of a half portion of these proceeds because such proceeds are the fruits of funds originally hers.

And recognition of her status as an owner glaringly reveals the irrelevancy of the choice of beneficiary provision. 54 Stat. 1010, 38 U. S. C. § 802 (g). Congress stated that the serviceman was to have the right to designate his beneficiary. When he has done so all other persons than the

---

[1] " . . . the only test applied to this problem has been whether the premiums (on a policy issued on the life of a husband after coverture) are paid entirely from community funds. If so, the policy becomes a community asset and the nonconsenting wife may recover an undivided one-half thereof . . . without regard to the disproportionate size of the premium when compared with the face of the policy." *Mundt* v. *Connecticut General Life Ins. Co.,* 35 Cal. App. 2d at 421, 95 P. 2d at 969.

one selected are foreclosed from claiming the proceeds as beneficiary. No further effect has the statute. Here the wife makes no claim to rights as a beneficiary. I am not persuaded that either the choice of beneficiary or the exemption provision should carry the implication of wiping out family property rights, which traditionally have been defined by state law. Fully to respect the right which Congress gave the serviceman to designate his beneficiary does not require disrespect of settled family law and the incidents of the family relationship. As noted in the opinion of the Court, analogous occasions have found courts expressing greater reluctance to obliterate rights recognized by the states.[2]

Even accepting the Court's view that the exemption provision applies to the wife, it was intended to protect the fund from attachment, levy, or seizure only so long as it could be identified as a fund. No attachment, levy, or seizure is attempted here. This was an action at law for a money judgment. Appellee obtained a judgment for one-half of the payments that had been collected by the beneficiaries and for one-half of those to be collected thereafter. Payments received under the policy are only the measure of the recovery.

To allow such a judgment does not interfere with the fund or the free designation of the beneficiary by the serviceman. I cannot believe that Congress intended to

---

[2] The Court has sought to distinguish, unsuccessfully I think, the many cases holding that payments received as pension, disability insurance, or veterans' compensation are not exempted from claims for alimony or family support by exemption statutes in the pattern of § 454a. Exhaustive discussions may be found in *In re Bagnall's Guardianship*, 238 Iowa 905, 29 N. W. 2d 597; *Schlaefer* v. *Schlaefer*, 71 App. D. C. 350, 112 F. 2d 177. See also *Gaskins* v. *Security-First Nat. Bank of Los Angeles,* 30 Cal. App. 2d 409, 86 P. 2d 681; *Hollis* v. *Bryan,* 166 Miss. 874, 143 So. 687. Cf. Note, 11 A. L. R. 123 and succeeding annotations.

say to a serviceman, "You may take your wife's property and purchase a policy of insurance payable to your mother, and we will see that your defrauded wife gets none of the money." Certainly Congress did not intend to upset the long-standing community property law of the states where it was not necessary for the protection of the Government in its relation to the soldier or to the integrity of the fund from "attachment, levy, or seizure." These are words of art. They have a definite meaning and usage in the law. This usage is not present here. I find nothing in the section that prohibits the beneficiary from being sued at any time on a matter growing out of the transaction by which the soldier acquired the insurance, at least where there is no attempt to attach, levy, or seize the fund. It was the fund Congress was interested in protecting, not the beneficiary. I would affirm.