Ted H. TAYLOR, Appellant,

v.

Elsie A. ROBERTS, Administratrix of the Estate of Larry W. Taylor, also known as Larry Warren Taylor, deceased, Appellee.

No. 6933.

United States Court of Appeals Tenth Circuit.

July 12, 1962.

Rehearing Denied Aug. 6, 1962.

Pickett, Circuit Judge, dissented.

Victor F. Crepeau, Denver, Colo. (Donaldson, Hoffman & Goldstein, Denver, Colo., were with him on the brief), for appellant.

Frederick B. Emigh, Durango, Colo. (Emigh & Emigh, Durango, Colo., were with him on the brief), for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

Elsie A. Roberts, the remarried widow of Larry W. Taylor, deceased, hereinaft-

er referred to as the veteran, as the administratrix of the estate of such veteran, brought this action against the United States, under 38 U.S.C.A. § 784, to recover the proceeds of a $10,000 National Service Life Insurance policy issued on the life of the veteran.[1] Ted H. Taylor, surviving father of Larry W. Taylor, filed a cross-complaint in which he sought to recover from the United States the proceeds of such policy.

The United States answered, admitting its liability under the policy, but because of the conflicting claims prayed that the court determine whether the administratrix, or Elsie, individually, or Ted H. Taylor was entitled to receive the proceeds of such policy.

While at the pretrial conference the United States stated that it was indebted either to the administratrix or to Ted H. Taylor in the sum of $10,000 under the policy of insurance, or in the alternative, that it was not indebted to either of them, it thereafter filed a written statement in lieu of a brief, wherein it admitted its liability under the policy and stated that it would abide the judgment of the court determining which one of the conflicting claimants was entitled to the proceeds of the policy.

The material facts are not in dispute. The veteran entered upon active service in the United States Navy on June 28, 1951, and was honorably discharged from the Navy on June 30, 1955. On October 13, 1955, he was rated by the Veterans Administration as 100 per cent disabled, because of a service-connected disability.

The National Service Life Insurance Act of 1940, 54 Stat. 1008 et seq., as amended, was further amended by the Act of April 25, 1951, 65 Stat. 33, 36, by adding, among others, new Sections 620 and 621*.

Section 621 in part provides that any person entitled to indemnity protection under § 2 of the Servicemen's Indemnity Act of 1951, who is ordered into active service for a period exceeding 30 days, shall, upon application in writing made within 120 days after separation from such active service and payment of premiums as provided in such section and without medical examination, be granted insurance by the United States against the death of such person occurring while such insurance is in force; that insurance granted under such section shall be issued upon the same terms and conditions as are contained in the standard policies of National Service Life Insurance on the 5-year level premium term plan, except that such insurance may be renewed for successive 5-year term periods at the attained ages; may not be exchanged for or converted to insurance on any other plan; the premium rates charged for such insurance shall be those stated in the section; and such insurance shall be on a nonparticipating basis.

Section 620 provides that any person who is released from active service under other than dishonorable conditions on or after the date of enactment of such 1951 Act and is found by the Administrator to be suffering from a disability or disabilities for which compensation would be payable, if 10 percentum or more in degree, and except for which such person would be insurable according to the standards established by the Administrator for qualifying under the good health provisions of the National Service Life Insurance Act of 1940, as amended, shall, upon application in writing made within one year from the date service connection of such disability is determined by the Veterans Administration and payment of premiums, as provided in the National Service Life Insurance Act, as amended, be granted insurance by the United States against the death of such person occurring while such insurance is in force; that the insurance granted under such section shall be issued upon the same terms and conditions as are contained in the standard

---

1. Elsie A. Roberts will hereinafter be refered to in her individual capacity as Elsie and in her fiduciary capacity as the administratrix.

* Now 38 U.S.C.A. §§ 722(a, c), 723.

policies of National Service Life Insurance, with certain exceptions not here material; that as to insurance issued under such section, waiver of premiums pursuant to § 602(n) shall not be denied on the ground that the service-connected disability became total prior to the effective date of such insurance; and that all persons granted indemnity protection under § 2 of the Servicemen's Indemnity Act of 1951 shall be deemed to be in the active service for the purpose of applying for insurance under this section.

Section 602(n) of the National Service Life Insurance Act of 1940, 54 Stat. 1008, 1011, provides that upon application by the insured under regulations promulgated by the Administrator, payment of premiums on insurance may be waived during the continuous total disability of the insured, which commenced subsequent to the effective date of such insurance and existed for six or more consecutive months prior to the attainment by the insured of the age of 60 years.[2]

On December 20, 1955, the veteran applied on Veterans Administration Form 9–4356a, for a National Service Life Insurance policy under § 621, supra. The form was the appropriate one for application for insurance under that section. He tendered with the application a premium payment of $14.90. He was not entitled to waiver of premiums on a § 621 policy.

The Veterans Administration rejected the application, for the reason that it was not made within 120 days after separation from the service, as required by § 621.

The veteran would have been entitled to a policy of insurance under § 620, had he made application under that section.

So far as this record indicates, after the rejection of the application made under § 621, the veteran did not pursue the matter further. On September 5, 1956, the veteran married the appellee, Elsie; he died on January 24, 1957, as the result of injuries sustained in an accident.

On December 9, 1957, Elsie filed a claim for insurance benefits with the Veterans Administration on Form 8–4125. The claim was disallowed and she appealed to the Board of Veterans Appeals. At the request of such Board the Insurance Department of the Veterans Administration reviewed the matter and on June 30, 1958, determined that on the basis of Veterans Administrative Decisions Nos. 504 and 923, insurance in the amount of $10,000 should be granted under § 620 upon the veteran's application under § 621 and ordered the issuance of such policy, effective January 1, 1956, which was the requested effective date in the veteran's application under § 621. Thereafter, the Insurance Department further found that the veteran was totally disabled from November 16, 1954, and waived insurance premiums subsequent to January 1, 1956.

Elsie was then advised that her claim was disallowed, because Ted H. Taylor, the father, was the designated beneficiary.

The Veterans Administration notified Ted H. Taylor to file a claim. Ted H. Taylor filed such a claim and the matter then proceeded to the Board of Veterans Appeals on the conflicting claims of Elsie and the father. On September 18, 1959, the Board held that the policy proceeds were payable to the father. This action was then duly filed.

The trial court entered a judgment setting aside the action of the Board of Veterans Appeals awarding the proceeds of the policy to Ted H. Taylor, directing the Veterans Administration to forthwith issue a National Service Life Insurance policy to Larry W. Taylor in the principal sum of $10,000, with no named beneficiary,[3] and awarding the adminis-

---

2. See, also, Act of September 2, 1958, 72 Stat. p. 1150, § 712, 38 U.S.C.A. § 712.

3. Section 602 of the National Service Life Insurance Act of 1940, as amended by the addition of § 602(u) by the Act of August 1, 1946, 60 Stat. 786, and as further amended by the Act of May 23, 1949, 63 Stat. 74, 75 [now 38 U.S.C.A. § 712(d)],

tratrix judgment against the United States for the entire unpaid proceeds of such policy.

Ted H. Taylor has appealed.

The trial court predicated its decision on the premise that National Service Life Insurance comes into being by reason of a contract, ordinarily the policy of insurance, between the United States and the veteran, and is not a gratuity; that under the stipulated facts there was no meeting of the minds between the United States and the veteran during the latter's lifetime on a § 620 contract of insurance and that, therefore, the case could not be disposed of on the basis of the rules or principles of contract law.

It is settled that National Service Life Insurance, other than automatic insurance, is not a gratuity and the insurance obligation comes into being by reason of a contract between the United States and the insured.[4] It is to be distinguished in that respect from automatic insurance, which is a gratuity.[5] To give rise to a contract, there must be a mutual agreement, a meeting of the minds of the contracting parties.[6]

Counsel for Ted H. Taylor undertake to establish his right to the proceeds of the insurance policy on the basis of contract law. In their brief they say, "The Veteran filed a timely application for NSLI under Section 620 of the NSLI Act of 1940, as amended, 65 Stat. 37 * * * and was qualified in all respects for NSLI under said section of the Act. For this reason, by operation of law, a contract of insurance came into existence between the United States and the Veteran upon receipt of Veteran's application * * * by Veterans' Administration, and by operation of law, of necessity, there was a meeting of minds between the Veteran and the Veterans' Administration."

The statement is premised on one incorrect statement of fact, namely, that the veteran filed an application for insurance under § 620.

The veteran, in fact, specifically applied for nonconvertible insurance on the 5-year level premium term plan, renewable for successive 5-year term periods at the attained ages, as provided for in § 621.

Although the veteran was entitled so to do, he did not file an application under § 620 for a policy of insurance "upon the same terms and conditions as are contained in the standard policies of national service life insurance," except that the premium rates should be those set forth in § 620, rather than the rates under the standard policies. Standard life insurance policies could be issued on the following plans: 5-year level premium term, ordinary life, 20-payment life, 30-payment life, 20-year endowment, endowment at age 60, and endowment at age 65. The insured, under a 5-year level premium plan, could convert such term insurance at the date when any premium becomes or has become due, or exchange it as of the date of the original policy, upon payment of the difference in reserve, at any time the insurance is in force, and within the term period, to or for any of the above-mentioned permanent plans of insurance; and if not so converted or exchanged, a 5-year level premium policy ceased and terminated at the expiration of the 5-year term period. Act of February 21, 1947, 61 Stat. 5, 6.

Thus, it will be seen that the policy of insurance which the veteran applied for under § 621 and the insurance pro-

---

provided that with respect to insurance maturing on or subsequent to the date of the enactment of the Insurance Act of 1946, in any case in which no beneficiary is designated by the insured, the unpaid insurance shall be paid in one sum to the estate of the insured.

4. Linton v. United States, 5 Cir., 227 F. 2d 254, 256; Lynch v. United States, 292

U.S. 571, 576, 577, 54 S.Ct. 840, 78 L.Ed. 1434.

5. Leyerly v. United States, 10 Cir., 162 F. 2d 79, 85.

6. Motter v. Patterson, 10 Cir., 68 F.2d 252, 255; Joseph v. Donover Company, 9 Cir., 261 F.2d 812, 818, 820; Utley v. Donaldson, 94 U.S. 29, 48, 24 L.Ed. 54.

vided for in § 620 are materially different in their terms and provisions.

The statutes providing for National Service Life Insurance accord to a qualified veteran the option to apply for and receive a National Service Life Insurance policy or not so to do. To have brought into being a contract of insurance between a veteran and the United States by issuing a § 620 policy when he had applied for a § 621 policy would not only have imposed a contractual obligation on him of terms and conditions different from the policy applied for, but also would have deprived him of his option to apply for or not apply for a contract of National Service Life Insurance under § 620. It is no doubt true that a § 620 policy, with the veteran's right to apply for and obtain a waiver of premiums, would have been more advantageous to him than a § 621 policy, but it was for the veteran to choose for himself, not for the Veterans Bureau to choose for him.

If, during the lifetime of the veteran, the United States had tendered to him a policy of insurance under § 621 and had he accepted such policy, then there would have been a meeting of the minds of the parties to an insurance contract, and the veteran would have been accorded his statutory right to change the beneficiary and to exercise the privileges of conversion which were never accorded to him, as no such policy was tendered or issued during his lifetime.

Giving the policy issued after the veteran's death an effective date prior to such death, of course could not revive the benefits he would have enjoyed had the policy been tendered to and accepted by him in his lifetime.

The right which he never received to change his beneficiary is all the more significant because of the change in his status resulting from his marriage.

The application made by the veteran did not meet the provisions of § 621, under which it was specifically made, in that it was made after the expiration of 120 days after his separation from the service, and it could not constitute an acceptance of the right given him by § 621, if such section should be regarded as an offer by the United States to the veteran. Moreover, his application requested the granting of such insurance, notwithstanding his application was filed more than 120 days after his separation from the service, and was, therefore, in effect, a counteroffer, rather than an acceptance of the right given him by § 621.

The application made by the veteran under the provisions of § 621 could not constitute an acceptance of the statutory right given him by § 620, even if § 620 be regarded as an offer by the United States of insurance to the veteran, since the veteran applied for and sought a policy of insurance in terms substantially different from the policy of insurance provided for in § 620.

Hence, we conclude that whether § 620 and § 621 each be considered as a continuing offer of insurance to a veteran qualified thereunder and the application of such a veteran for insurance thereunder an acceptance of such offer, or whether the application for insurance by a veteran should be considered as the offer, and the issuance of the policy by the United States as an acceptance of such offer, the same result must follow under the facts in the instant case.

■ However, we are of the opinion that § 620 does not constitute an offer to a veteran qualified thereunder of a policy of insurance under the terms and conditions provided for therein and that the same is true of § 621. Rather, we are of the opinion that § 620 and § 621, each, gives a statutory right to a veteran who comes within its respective provisions at his option to apply for a policy of insurance thereunder and that the application for such insurance is the offer and the issuance of the policy is an acceptance of such offer by the Veterans Administration, which gives rise to the insurance contract.

■ We think the terms and provisions of the statutes relating to National

Service Life Insurance clearly manifest an intention of Congress that insurance obligations shall not arise unless and until a policy has been issued in accordance with the provisions of such statutes, except in extraordinary situations, where statutory provision is made for an insurance obligation to come into being automatically, under stated facts and circumstances, without the issuance of a policy of insurance. An example of the latter is found in § 602(c) of the National Service Life Insurance Act of 1940, as amended by the Act of August 1, 1946, 60 Stat. 781, 782, § 2(c) (3), and § 2 of the Servicemen's Indemnity Act of 1951, 65 Stat. 33.

■ Since the application made by the veteran was not accepted by the Veterans Administration during the veteran's lifetime, under well-settled principles of contract law, it could have been withdrawn by the veteran at any time prior to his death and was terminated by his death.[7]

The issuance of a policy after the death of the veteran under the provision of § 620 was not an acceptance of the veteran's offer made in his application under § 621, even if such application be treated as made under § 620, because the offer was terminated by the death of the veteran. Even if it had not so terminated, it would have terminated by the lapse of a reasonable time for its acceptance.[8]

We agree with the trial court that there was no meeting of the minds on the terms of an insurance contract during the lifetime of the veteran and that there is no way to predicate a duty on the part of the United States to issue a policy under the provision of § 620 on the basis of the rules or principles of contract law.

We shall assume, without deciding, that the Veterans Administration, instead of rejecting the application made by the veteran on the ground that it was untimely, should have tendered the veteran a policy of insurance incorporating the terms and conditions provided for in § 620 and that because of its failure so to do, it owed an obligation to his estate after his death.

Had the Veterans Administration tendered a § 620 policy to the veteran on his § 621 application during his lifetime and had he accepted same, he would have enjoyed the privileges during his lifetime of changing the beneficiary and of converting his policy to an ordinary life, 20-payment life, 30-payment life, or an endowment policy. Thus, it becomes clear that if there arose a duty on the part of the Veterans Administration not to reject the veteran's application, but to tender him a § 620 policy, complete restitution for such failure of duty could not be made after the death of the veteran. Obviously, the veteran could not enjoy the privilege of changing the beneficiary or converting the policy under a policy issued after his death.

Since no policy was issued as the result of mutual agreement between the veteran and the United States, the designation of Ted H. Taylor in the application was of no force or effect and the Veterans Administration erred in naming Ted H. Taylor as the beneficiary in the policy which it issued.

Assuming again that there was a duty on the United States to make restitution for its failure to tender to the veteran in his lifetime a § 620 policy, such restitution can be best accomplished by the issuance of a policy without a named beneficiary and the distribution of the proceeds thereof more nearly in accordance with his desire, as manifested by a general or residuary bequest in his last will and testament, if he died testate, or if he died intestate, by his election to let his estate pass under Colorado statutes of descent and distribution.

Accordingly, we conclude the judgment of the trial court was right and it is affirmed.

7. Restatement of Contracts § 48; 17 C.J. S. Contracts § 51c, p. 400.

8. Truscon Steel Co. v. Cooke, 10 Cir., 98 F. 2d 905, 910; 17 C.J.S. Contracts § 51b, p. 399.

PICKETT, Circuit Judge (dissenting).

I respectfully dissent because I do not believe that the liability of the United States can be disassociated from the application filed by the veteran during his lifetime, which named his father as the beneficiary of the insurance for which application was made. This is the only basis upon which the policy could be issued, and the policy is the only basis for any obligation on the part of the United States. This action was brought to recover the proceeds of the policy, and on the undisputed facts no other action against the United States is authorized.

When the veteran made application for National Service Life Insurance he mistakenly used the form provided for applications submitted under Section 621 of the National Service Life Insurance Act. National Service Life Insurance Act of 1940, § 621, amended by adding ch. 39, § 10, 65 Stat. 37 (1951). This application was rejected because it was not, made within the time required by the statute. When it was submitted, the veteran had been classified by the Veterans Administration as 100% disabled, and he was, therefore, entitled to insurance if he applied within one year under Section 620 of the Act. National Service Life Insurance Act of 1940, § 620, amended by adding ch. 39, § 10, 65 Stat. 36 (1951). The mistake in applying under the wrong section is no longer material since it is agreed that the application should have been accepted as one submitted by a disabled veteran under Section 620. The United States belatedly recognized its error in not so treating the application, and a policy was issued under Section 620 in accordance with the applicable portions of the application.

If the application had been made on the form furnished for those desiring a policy under Section 620, the veteran would have been entitled to a policy insuring him from the date requested in the application. The liability of the United States is not to be determined by a meeting of the minds of the parties in the usual sense, because the right of the veteran was statutory, and the obligation of the United States was fixed upon his compliance with the statutory provisions. The Administrator of Veterans Affairs had no power to reject the application. The fact that the applicant was deceased at the time the error was recognized and corrected is immaterial, and does not affect the right created by the application.

The United States has treated the application as one submitted under Section 620, and it concedes that the veteran was insured from the date set forth therein. It seems to me that it follows that any liability of the United States must arise out of the policy which was issued, or there is no liability on the part of the United States, and the act of the Administrator in issuing the policy was a gratuity. National Service Life Insurance is not a gratuity, and this action was brought to collect the proceeds of an insurance obligation of the United States.

The policy which was issued named the appellant as beneficiary in accordance with the application, and until there was a change by the insured, the designated beneficiary is entitled to the proceeds of the policy. Changed conditions of the insured do not alone effect a change of beneficiary. We have said in numerous cases that to constitute a valid change of beneficiary in a N.S.L.I. policy, the insured must manifest an intention to make such change and perform some affirmative act to carry out that intention. Lovato v. United States, 10 Cir., 295 F.2d 78, and cases cited therein. In Wissner v. Wissner, 338 U.S. 655, 658, 70 S.Ct. 398, 94 L.Ed. 424, the Court said:

"The controlling section of the Act provides that the insured 'shall have the right to designate the beneficiary or beneficiaries of the insurance [within a desginated class], * * * and shall * * * at all times have the right to change the beneficiary or beneficiaries * * *.' 38 U.S.C. § 802(g). Thus Congress has spoken with force and clarity in directing that the proceeds belong to

the named beneficiary and no other. Pursuant to the congressional command, the Government contracted to pay the insurance to the insured's choice. He chose his mother. * * "

I would reverse the judgment and direct the policy proceeds to be distributed to the designated beneficiary.