**Robin PARKER**

v.

**OFFICE OF SERVICEMEMBERS' GROUP LIFE INSURANCE, et al.**

**No. CIV. A. 99–6158.**

United States District Court,
E.D. Pennsylvania.

April 6, 2000.

---

Frank S. Nofer, Kelly, McLaughlin & Foster, Philadelphia, PA, for Plaintiff.

Andrew J. Soven, Reed, Smith, Shaw and McClay, Philadelphia, PA, for Defendants.

## MEMORANDUM

BARTLE, District Judge.

This action involves a dispute over the amount due under a group life insurance policy on the life of a deceased member of the United States Navy. The beneficiary, the decedent's mother, has sued the Office of Servicemembers' Group Life Insurance and the Prudential Insurance Company of America, Inc. ("Prudential") pursuant to the Servicemembers' Group Life Insurance Act ("SGLIA"), 38 U.S.C. §§ 1965, et seq. Plaintiff has also set forth separate state law claims for negligence, breach of contract, fraud, and bad faith.[1] Presently before the court is the motion of the defendants to dismiss these counts for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). Defendants contend that the SGLIA preempts these causes of action.

For purposes of ruling on this motion, all well-pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the non-movant. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). We draw any reasonable inferences from the allegations in

---

1. In Counts I and IV, plaintiff alleges that defendants are liable for negligence and fraud, respectively, because they provided Donald Parker with an outdated form which misrepresented the default amount of coverage available to him. Count II is for breach of the insurance "contract [Donald Parker had] with Defendants." Compl. ¶ 46. Count V alleges that defendants have denied plaintiff the insurance proceeds in bad faith.

plaintiff's favor. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir.1994). We will dismiss a complaint only when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See Hishon,* 467 U.S. at 73, 104 S.Ct. 2229.

According to the complaint, Donald Parker served in the Navy for five years and was honorably discharged on February 21, 1998. He died on June 6, 1998. While on active duty, Mr. Parker "obtained life insurance ... through the Office of Servicemembers Group Life Insurance." Compl. ¶ 10. Mr. Parker signed two forms, one in 1996 and one in 1997, in which he elected life insurance coverage and designated a beneficiary. Mr. Parker's signature on each form was witnessed by another member of the Navy. The present dispute concerns whether Mr. Parker's beneficiary is entitled to $100,000 or $200,000 in life insurance proceeds.

Congress enacted the SGLIA in 1965. It was the latest in a series of statutes designed to provide life insurance for military personnel. During World War I, Congress had in place a life insurance program called War Risk Insurance. *See Ridgway v. Ridgway,* 454 U.S. 46, 51 n. 3, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). The National Service Life Insurance Act of 1940 ("NSLIA"), 38 U.S.C. §§ 1901, *et seq.,* the predecessor to the SGLIA, was implemented just prior to the United States' engagement in World War II. *See id.* at 50, 102 S.Ct. 49. The NSLIA lapsed after the Korean hostilities. *See id.* at 50–51, 102 S.Ct. 49. At the time Congress enacted the SGLIA, the United States' involvement in Vietnam had caused many private commercial insurers to limit coverage for members of the armed services. *See id.* at 51, 102 S.Ct. 49. The SGLIA was enacted to provide active duty military personnel, especially those in combat zones, with access to affordable life insurance coverage. *See id.* at 50, 102 S.Ct. 49.

Under the SGLIA, the Secretary of Veterans' Affairs ("Secretary") purchases group coverage from one or more commercial insurers. *See* 38 U.S.C. § 1966(a). The government contracted with defendant Prudential to provide the coverage which is the subject of the dispute here. The United States, not the service member, is the policyholder. *See Ridgway,* 454 U.S. at 51, 102 S.Ct. 49. The Supreme Court has aptly described the mechanics of the SGLIA program:

> In order to make the insurance available through a commercial carrier at a reasonable rate, notwithstanding the special mortality risks that service members often must assume, Congress undertook to subsidize the program.... A sum representing the extra premium for special mortality risks is periodically deposited by the United States into a revolving fund that is used to pay premiums on the master policy.... The fund otherwise is derived primarily from deductions withheld from service members' pay.... Accordingly, depending upon the conditions faced by service members at any given time, the program may be financed in part with federal funds.

*Id.* at 52, 102 S.Ct. 49. Monthly payroll deductions are "the same for all such [service] members." 38 U.S.C. § 1969(a)(1). The statute and relevant regulations require Prudential to maintain the Office of Servicemembers' Group Life Insurance ("OSGLI") in Newark, New Jersey, in order to administer the SGLIA program. *See* 38 U.S.C. § 1966(b); 38 C.F.R. § 9.1(b).

As noted above, defendants contend that the SGLIA preempts plaintiff's state law claims. In response, plaintiff argues not only that her state claims are not preempted but that the SGLIA does not even provide a cause of action by which a plaintiff may pursue relief. Surprisingly, plaintiff makes this latter argument despite the fact that she has asserted a claim under the SGLIA in Count III of her complaint,

a count which the defendants do not seek to dismiss.

Both the Supreme Court and the Seventh Circuit have addressed questions involving the conflict between the SGLIA and state law, although neither specifically has addressed the issue of preemption as it may apply to a dispute over the amount of the policy proceeds. In each case, the court ruled in favor or the applicability of the SGLIA.

*Ridgway v. Ridgway,* 454 U.S. 46, 52, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), concerned the question of who was entitled to the proceeds of an SGLIA life insurance on the life of a Richard Ridgway, a member of the United States Army. In a divorce judgment, a Maine court ordered him to maintain this life insurance coverage for the benefit of his children. Ridgway, later remarrying, removed his first wife as the policy's beneficiary but did not name a beneficiary in her place. If a soldier or sailor did not specify a beneficiary, the SGLIA did so. *See* 38 U.S.C. § 1970(a) (formerly 38 U.S.C. § 770(a)). Ridgway's current wife was the designated beneficiary under the SGLIA. After his death, his first wife sued in state court to enjoin Prudential from paying benefits to the second wife. On appeal, the Supreme Judicial Court of Maine ordered the proceeds of the policy to be paid to his first wife despite the statutory mandate under the SGLIA. The United States Supreme Court reversed, holding that the SGLIA provisions prevailed. It explained:

> "Possession of government insurance, payable to the relative of his choice, might well directly enhance the morale of the serviceman. The [provision exempting policy proceeds from attachment, levy, or seizure] . . . is his guarantee of the complete and full performance of the contact to the exclusion of conflicting claims. The end is a legitimate one within the congressional powers over national defense, and the means are adapted to the chosen end." . . . . The federal interest is especially strong be-

cause a substantial share of the proceeds of an SGLIA policy may be attributable to general tax revenues.

*Ridgway,* 454 U.S. at 56–57, 102 S.Ct. 49 (quoting *Wissner v. Wissner,* 338 U.S. 655, 660–61, 70 S.Ct. 398, 94 L.Ed. 424 (1950)).

In *Prudential Ins. Co. of Am. v. Athmer,* 178 F.3d 473 (7th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 342, 145 L.Ed.2d 267 (1999), two insurance companies brought an interpleader action to determine who should receive the proceeds of two life insurance policies owned by a man who had been murdered by his wife. One of the relevant policies was issued pursuant to the SGLIA. The decedent had named his wife as the primary beneficiary of the SGLIA policy and his wife's son as the contingent beneficiary. The decedent's daughter argued that the court should apply Illinois law to decide whether, after disqualification of the primary beneficiary (the murderer), the murderer's natural son was entitled to receive the proceeds of the SGLIA policy. Declining to apply state law, the Court of Appeals for the Seventh Circuit opted, instead, "to effectuate federal policies." *Id.* at 475. The Court stated:

> [B]orrowing state law would be a mistake in the case of soldiers' life insurance policies. Frequently as in this case the policy is issued wherever the soldier happens to be stationed when thoughts of mortality assail him. Although soldiers generally designate a U.S. state as their domicile, their connection with that state is often tenuous until retirement. It would be arbitrary to subject issues arising under the policy to the law of a particular state. Better that these policies should be governed by a uniform set of rules untethered to any particular jurisdiction.

*Id.*

Plaintiff is correct that the SGLIA does not expressly create a federal right of action against the insurer or OSGLI. In the jurisdictional grant found in § 1975 of

the SGLIA, Congress simply provided, "The district courts of the United States shall have original jurisdiction of any civil action or claim against the United States founded upon this subchapter." 38 U.S.C. § 1975. The United States is not named as a defendant in this action.

■ In order for us to determine whether there is an implied right of action under the SGLIA for a beneficiary to assert a claim against OSGLI and Prudential for proceeds wrongfully withheld, we must look to congressional intent. *See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *State, Dept. of N.J., Dept. of Environmental Protection and Energy v. Long Island Power Authority,* 30 F.3d 403, 421 (3d Cir.1994). The United States Supreme Court has enunciated a four-part test to assist the courts in this regard:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? .... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? .... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (citations omitted). The first two factors are the most important. *See Long Island Power Auth.,* 30 F.3d at 421.

■ The first prong of the *Cort* test requires us to ask not simply who would benefit from the SGLIA, but "whether Congress intended to confer federal rights upon those beneficiaries." *State of California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981). Congress clearly intended to provide federal benefits in the form of life insurance for those serving their country in the armed forces, a benefit that would be difficult if not impossible to obtain without this legislation. In doing so, the SGLIA regulates in detail such factors as who is eligible for coverage, what amounts of coverage shall be available, and how premium rates are to be determined. Through its contract with the Secretary, the insurer is required to comply with the SGLIA's provisions. *See* 38 U.S.C. § 1966(a). As the Supreme Court has noted, "The obvious and stated concern of Congress [in enacting the SGLIA] was to provide coverage for the [service] member, no matter how hazardous the duty, *and thus protection for the member's designated beneficiaries.*" *Ridgway,* 454 U.S. at 53, 102 S.Ct. 49 (emphasis added). Based upon the text of the statute and the obligations it imposes upon the insurer, we conclude that plaintiff is within "the class for whose especial benefit the statute was enacted." *Cort,* 422 U.S. at 78, 95 S.Ct. 2080 (internal quotation marks and citation omitted).

Next, we look to legislative intent, explicit and implicit, regarding whether Congress intended to create or deny a remedy. While the legislative history is silent regarding the right of beneficiaries to bring actions against the insurer and its administrative office to collect on a policy issued under the statute, we believe such a remedy is implied in the SGLIA. Our conclusion is consistent with the holdings of both *Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 and *Prudential,* 178 F.3d 473. In addition, the Department of Veterans' Affairs, which promulgated the implementing regulations for the SGLIA, understood that Congress contemplated actions against the insurer for proceeds of the policy. Under the regulations, "Actions at law or in equity to recover on the policy, in which there is not alleged any breach of any obligation undertaken by the United

States, should be brought against the insurer." 38 C.F.R. § 9.13. Surely Congress did not intend to extend the salutary benefits under the SGLIA and then deny a federal remedy when the benefits were wrongfully withheld.

The third *Cort* factor is whether a federal remedy for the plaintiff is consistent with the overall structure and purpose of the statute. The SGLIA makes available affordable life insurance to members of the military. It was enacted as part of our national defense effort. *See Ridgway,* 454 U.S. at 57, 102 S.Ct. 49. Providing a federal remedy to obtain the benefits conferred by this statute is certainly in harmony with that purpose.

The final factor we are to consider is whether the matter is one traditionally relegated to state law. While insurance contracts between private parties traditionally have been regulated by the states, we are not dealing with that situation here. The federal government is the policyholder. The insureds serve in the armed forces of the United States. It is not the traditional role of state law to govern insurance or other contracts to which the United States is a party or to determine the limits of military benefits.

Although the language of the statute and the legislative history are silent regarding whether Congress created a federal cause of action on behalf of beneficiaries who seek to collect on policies issued pursuant to the SGLIA, the overall structure and purpose of the statute convince us that Congress intended to create a right of action which allows a beneficiary of a life insurance policy issued under the SGLIA to pursue a federal claim against the insurer for proceeds withheld.

▪ We now turn to the question of whether plaintiff's state law causes of action for negligence, breach of contract, fraud, and bad faith are preempted. The Supremacy Clause of the United States Constitution provides, "[T]he Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supreme Court has explained that there are three ways in which federal law displaces, or preempts, state law: (1) express preemption; (2) field preemption, also called implied preemption; and (3) conflict preemption. *See Orson, Inc. v. Miramax Film Corp.,* 189 F.3d 377, 381 (3d Cir.1999) (citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Development Com'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) and *International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987)), *cert. denied,* —— U.S. ——, 120 S.Ct. 1286, —— L.Ed.2d —— (2000). The parties agree that express preemption, which arises when an act of Congress includes an explicit direction that state law is displaced, is not at issue in this case. Field or implied preemption displaces state law where "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (internal quotation marks and citation omitted). Conflict preemption arises either because compliance with both federal and state law is not possible or because the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *see also Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Implied preemption and conflict preemption are not "rigidly distinct." *English v. General Elec. Co.,* 496 U.S. 72, 79 n. 5, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). In performing our preemption analysis and deciding the scope of any preemption, once again our task is to determine Congress' intent. *See California Federal Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987).

■ Congress has been providing for and regulating insurance for members of the armed services since 1917. *See Ridgway,* 454 U.S. at 50–51, 102 S.Ct. 49. The Supreme Court has described the SGLIA as having "pervasive and detailed characteristics." *Id.* at 53, 102 S.Ct. 49. So that service members would have access to life insurance at a reasonable and uniform rate, Congress subsidizes the program. *See id.* at 52, 102 S.Ct. 49.

The United States plays an integral part in the organization and administration of the program. As we observed above, the United States chooses the insurer and is the policyholder. Congress has established the maximum amount of coverage allowed under the program. *See* 38 U.S.C. § 1967. The Secretary has the right to discontinue any SGLIA policy "at ·any time." 38 U.S.C. § 1966(d). The Secretary determines the uniform amount which is to be collected from service members in order to pay the cost of coverage, as well as the amount of any additional contribution by the federal government in order to make up for the "extra hazard of duty in the uniformed services." 38 U.S.C. § 1969(b); *see also* 38 U.S.C. § 1969(a)(3). The federal government, rather than the insurer, issues the "certificate setting forth the benefits to which the member is entitled thereunder, to whom such benefit shall be payable, to whom claims should be submitted, and summarizing the provisions of the policy principally affecting the member." 38 U.S.C. § 1972. The Department of Veterans Affairs makes "conclusive" determinations about who is eligible for coverage, whether a person was covered at a specific point in time, whether a person has forfeited coverage by committing an offense listed in 38 U.S.C. § 1973, and a number of other coverage issues. *See* 38 C.F.R. § 9.7.

The Supreme Court's description of the National Service Life Insurance Act, the SGLIA's precursor, as "the congressional mode of affording a uniform and comprehensive system of life insurance for members and veterans of the armed forces of the United States," *Wissner,* 338 U.S. at 658, 70 S.Ct. 398, is equally applicable to the SGLIA. We do not believe that when it enacted this comprehensive statutory program, Congress had in mind that the rights of the beneficiaries would vary depending on what state's law might be applied. If it did, the Secretary would have a whole host of additional factors to consider when establishing the premium rate, and we have found no evidence that Congress intended this significant variable to be considered.

If defendants were subject to liability under the various state laws for their actions in making policy determinations under the SGLIA, the uniform life insurance program for the members of the armed forces and their beneficiaries would no longer be uniform. *See Prudential,* 178 F.3d at 475. Depending on what state law may apply, some beneficiaries might not be able to collect all of their rightful benefits as envisioned by Congress. Others might be able to obtain more than the face amount of the policy because of state bad faith or other causes of action. Some might be able to collect counsel fees and others not. There might also be inequities due to the vagaries of the various state conflict of laws rules. We do not think that Congress intended such diverse results, particularly because the United States is the policyholder and is subsidizing the program. We conclude that "Congress left no room for the States to supplement" in the field of life insurance for members of the armed services, *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608, and that permitting state law claims to be pursued in actions to collect on an SGLIA policy, such as those alleged here, would conflict with Congressional intent to provide a uniform system of life insurance coverage for military personnel. In sum, "[i]t would be arbitrary to subject issues arising under the policy to the law of a particular state." *Prudential,* 178 F.3d at 475. If federal law governs the designation of the benefi-

ciary to receive the policy proceeds, we see no reason why it should not govern the issue of how much the policy proceeds should be. *See id.* If the SGLIA preempts a state law domestic relations order so as to prevent enforcement of an obligation a soldier had to his children, it surely preempts state law here. *See Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39.

We need not decide, at this stage, the scope of plaintiff's claim under the SGLIA.

In summary, we conclude that the SGLIA preempts plaintiff's state law claims. Counts I, II, IV, and V of the complaint will be dismissed.