Wilmina J. MAXWELL, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 50378.

United States District Court,
N. D. California.

May 21, 1970.

Steven M. Kipperman, San Francisco, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., Steven Kazan, Asst. U. S. Atty., San Francisco, Cal., for defendant.

Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment

GERALD S. LEVIN, District Judge.

This action comes before the Court on cross-motions for summary judgment filed by the parties herein. The plaintiff filed a complaint for breach of contract and declaratory relief on November 25, 1968, and by her complaint plaintiff seeks a declaration that a policy of insurance exists in her favor under the National Service Life Insurance provisions and that she is entitled to full benefits under said policy of insurance.

The facts of this case have been stipulated to by the parties and are as follows:

1. Robert H. Maxwell served in the armed forces of the United States from July 18, 1941 to September 20, 1947.

2. While serving in the armed forces, Robert H. Maxwell incurred a service-connected disability involving his back. Said disability was sufficient to make him eligible to apply for National Service Life Insurance pursuant to 38 U.S.C. § 725(b) (added in 1964 by P.L. 88–664).

3. In May or June of 1965, Robert H. Maxwell secured VA Form 29–8129, the form designated on which to apply for National Service Life Insurance pursuant to 38 U.S.C. § 725(b) if in-

surable under the Administrator's "good health" standards notwithstanding his service-connected disability.

4. On October 13, 1965, Robert H. Maxwell completed the form (hereafter sometimes referred to as the "application for insurance"). A true copy of said form is attached hereto and is incorporated by reference herein.

5. Robert H. Maxwell mailed the form, together with the appropriate premium, to the Veterans Administration. The envelope in which the form and premium arrived at the Veterans Administration bore a postmark of October 19, 1965.

6. Robert H. Maxwell applied for $10,000.00 of life insurance coverage and designated his wife Wilmina J. Maxwell, the Plaintiff herein, as beneficiary. Robert and Wilmina's two sons were named as contingent beneficiaries, each to receive one-half of the insurance proceeds.

7. The application for insurance accurately answered all questions included on the form as of the date the application was completed.

8. On October 18, 1965, Robert H. Maxwell visited Dr. Charles B. Hudson in Oakland, California. Dr. Hudson was a heart specialist. A true copy of a letter written by Dr. Hudson is attached hereto and is incorporated by reference herein.

9. On October 21, 1965, Robert H. Maxwell died of pulmonary congestion and edema due to coronary atherosclerosis.

10. On or about October 27, 1965, the Veterans Administration cashed Robert H. Maxwell's check for the National Service Life Insurance premium.

11. On November 6, 1965, Wilmina J. Maxwell wrote the Veterans Administration Center requesting forms on

which to claim the insurance benefits applied for by the decedent.

12. On January 6, 1966, the Veterans Administration (by one H. D. Gish, Insurance Officer) wrote that:

> On review of the medical records, it was determined that your husband had angina pectoris. This condition was established as not being service-connected. Therefore, he could not meet the necessary good health requirements for issuance of this insurance, and the application has been disapproved.

On February 16, 1966, the Veterans Administration (by one James W. Stephens, Adjudication Officer) reaffirmed the Government's position that "(t)he insurance was never active".

13. On June 27, 1967, Wilmina J. Maxwell's former counsel, William T. Belcher, Jr., wrote to James W. Stephens and enclosed medical reports indicating that "there has never been a diagnosis of angina pectoris".

14. On July 12, 1967, the Veterans Administration (by one G. A. Loftis, Adjudication Officer) wrote:

> We have considered the letters you recently submitted. Although Mr. Maxwell's heart condition was incorrectly labeled "angina pectoris" in our letter of January 6, 1966, the fact remains that he did have a non-service-connected disability so disabling as to preclude our issuance of insurance.

15. Dr. Allan McNie, a pathologist who personally conducted a post-mortem examination of Robert H. Maxwell expressed his opinion and findings in a letter. A true copy of the letter is attached hereto and is incorporated by reference herein.

16. No allegation or defense of fraud is made or asserted by either party hereto.

## DISCUSSION

### 1. *Jurisdiction*

Plaintiff contends that this Court has already resolved the question of subject matter jurisdiction in plaintiff's favor by reason of the Order of this Court dated and filed November 6, 1969, by which Order, *inter alia,* the motion of the United States to dismiss the action as to it was denied. Contrary to plaintiff's position, however, this Court did not purport to resolve and did not in fact resolve the question of jurisdiction in its Order of November 6, 1969. Consequently, the issue of jurisdiction must be resolved and the Court now undertakes that task.

Plaintiff argues that this Court has jurisdiction of the present action by virtue of 38 U.S.C. § 784 (Suits on insurance). That statute says in part:

> (a) In the event of disagreement as to claim, including claim for refund of premiums, *under contract* of National Service Life Insurance * * * and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the United States District Court for the District of Columbia or in the district court of the United States in and for the district in which such person or any one of them resides, and *jurisdiction is conferred* upon such courts to hear and determine all such controversies. [Emphasis added.]

As is clear by its terms, 38 U.S.C. § 784 is only applicable to provide a basis for jurisdiction when the suit brought thereunder is dependent upon an underlying, outstanding policy of insurance, i. e., where the claim is *under contract.* Although plaintiff contends that its claim is under a policy of insurance, this Court views the claim to be instead one to compel the issuance of a policy. Accordingly, 38 U.S.C. § 784 will not suffice to confer jurisdiction on this Court

for purposes of the present action, for that statute does not provide a basis for jurisdiction in order to compel the issuance of a policy of National Service Life Insurance. Meadows v. United States, 281 U.S. 271, 274, 50 S.Ct. 279, 74 L.Ed. 852 (1930); Outlaw v. United States, 293 F.Supp. 935, 936 (S.C.1967).

Another possible basis for jurisdiction is 38 U.S.C. § 785 (Decisions by the administrator), which statute reads as follows:

> Except in the event of suit as provided in section 784 of this title, *or other appropriate court proceedings*, all decisions rendered by the Administrator under the provisions of this chapter shall be final and conclusive on all questions of law or fact, and no other official of the United States shall have jurisdiction to review any such decisions. [Emphasis added.]

The courts have been split as to whether this statute extends the jurisdiction conferred by 38 U.S.C. § 784 and therefore leaves in doubt the question as to whether 38 U.S.C. § 785 would provide a basis for jurisdiction in a case such as that presently before this Court.

■ The weight of recent authority, based on a reasonable approach to the meaning of 38 U.S.C. § 785 in the light of its legislative history, leads this Court to conclude that 38 U.S.C. § 785 does *not* provide a basis for jurisdiction in the present action. Compare Unger v. United States, 79 F.Supp. 281, 283 (E.D.Ill. 1948) with McKinney v. United States, 301 F.Supp. 37, 38–39 (N.D.Ala.1969); McKay v. United States, 286 F.Supp. 1003, 1005–1007 (S.D.Tex.1968); (both of which latter cases reject the rationale and result of the *Unger* case).

The Court concludes, therefore, that it is without jurisdiction to entertain the present action.[1]

### 2. *The Merits of Plaintiff's Claim*

Even were this Court to have jurisdiction over the present action, plaintiff's contentions would have to be denied on their merits.

Plaintiff argues that, pursuant to specified procedures under the applicable statutory provisions, a policy of National Service Life Insurance must issue when the following requirements are met: (1) application is made on the proper form; (2) application is not fraudulent; (3) the applicant is in "good health" within the meaning of the relevant statutory provision; and (4) the appropriate premium is tendered.

Defendant does not dispute that Robert H. Maxwell fulfilled requirements (1), (2), and (4) above noted, but does contend that since Robert H. Maxwell was not found to be in "good health," he did not fulfill requirement (3) and hence was not entitled to have a policy of National Service Life Insurance issued to him.

Plaintiff counters by arguing that the Veterans Administration is bound by the reason it gave for its initial rejection of Robert H. Maxwell's application (i. e., a finding of "angina pectoris") and that as a result, under Securities and Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626 (1943), if such reason were erroneous (which defendant concedes it was), the effect would be to nullify the purported rejection and bring Robert H. Maxwell's insurance policy into force "by operation of law."

■ There has been considerable confusion and discussion over the precise holding and purport of the *Chenery* case, and the authorities cited by defendant lead the Court to conclude that the *Chenery* Doctrine is inapplicable on the

1. One other possible basis for jurisdiction was found in Kapourelos v. United States, 306 F.Supp. 1034, 1037 (E.D.Pa. 1969), where the court found the federal mandamus statute (28 U.S.C. § 1361) sufficient to permit the court to issue to the plaintiff a policy of National Service Life Insurance which had earlier been denied the plaintiff. In *Kapourelos*, unlike the present case, the Board of Veterans Appeals had already held and admitted that the beneficiary's deceased had been en-

facts of the present case to support a finding for the plaintiff. To find to the contrary would not only extend the *Chenery* Doctrine to an area not yet hinted at by any authority cited to this Court, but would also work a form of estoppel against the Government in contravention of normal rules of equity practice.[2]

█ Finally, plaintiff argues that the rules of private insurance law are inapposite where the Government is involved, and that as a result there need be no "meeting of the minds" between the Government (through its representatives) and the applicant in order for a policy of National Service Life Insurance to come into force. No cases are cited to support this proposition, and the Court is persuaded to the contrary by Taylor v. Roberts, 307 F.2d 776, 780–781 (10th Cir. 1962).

### 3. *Form of Recovery*

█ It should be noted in conclusion that even were this Court to have jurisdiction in the present action, and even were it to find in plaintiff's favor on the merits, plaintiff's recovery under the desired policy of National Service Life Insurance would be limited to the amount of the premium(s) paid, since the insured died within the first year of policy coverage from a nonservice-connected disability. 38 C.F.R. § 8.112a(c) (1). The regulation has been upheld as valid against a claim that it conflicts with certain sections of the National Service Life Insurance Law to which is applies. Kapourelos, supra, 306 F.Supp. at 1038–1041; Guy v. United States ex rel. Veterans Administration, 280 F.Supp. 281, 284–285 (E.D.La.1968).

Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

It is so ordered.

titled to the issuance of a policy of National Service Life Insurance.

2. It is the usual rule that estoppel will not lie against the United States acting in its sovereign capacity, and this rule

has been applied to its administration of the National Service Life Insurance program. United States v. Willoughby, 250 F.2d 524, 531 (9th Cir. 1957); McDaniel v. United States, 196 F.2d 291, 294–295 (5th Cir. 1952).