**Anastasia KAPOURELOS, Appellant,**

v.

**UNITED STATES of America and William J. Driver, Administrator of Veterans Affairs.**

**No. 18999.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 15, 1970.

Decided July 19, 1971.

**1182**

———◆———

Anthony G. Kaprelos, Tulsa, Okla. (Basil C. Clare, Chester, Pa., on the brief), for appellant.

Robert V. Zener, Atty., Dept. of Justice, Civil Div., Washington, D. C. (William D. Ruckelshaus, Asst. Atty. Gen., Louis C. Bechtle, U. S. Atty., Walter H. Fleischer, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellees.

Before HASTIE, Chief Judge, and FREEDMAN * and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

Public Law 88–664 of October 13, 1964, 78 Stat. 1096, 38 U.S.C. § 725, provided for the temporary reopening of the veterans' insurance program and authorized the issuance of policies of National Service Life Insurance to veterans, including those otherwise not insurable because of non-service-connected disability. In implementing this authorization, the Administrator of Veterans' Affairs promulgated a regulation that excluded from the risks to be covered by the newly authorized life insurance death occurring within one year after the effective date of a policy as a result of non-service-connected disease or injury that existed when the policy was issued. 38 C.F.R. § 8.112a(c). The validity of that regulation is the matter in dispute on this appeal.

Tolly Kapourelos, a veteran, made timely application for such insurance. On July 12, 1965, less than three months after the application, the veteran died with no policy having been issued. His mother, as named beneficiary, applied for the proceeds of the requested policy.

Her claim was denied by the Administrator of Veterans' Affairs and the necessary administrative appeals were taken. Ultimately, the Board of Veterans Appeals rejected the claim in a decision based upon the following stated conclusions:

"1. The veteran was entitled to issuance of a policy of $10,000 National Service Life Insurance under the provisions of 38 U.S.C. 725 because of uninsurability.

"2. If the policy had been issued, payment could not properly be authorized because he died within one year of date of application from nonservice-connected disability in existence on date of application. (38 C.F.R. 8, 112a(c))."

Decedent's mother then brought suit in the district court, where summary judgment was granted for the Administrator. E.D.Pa.1969, 306 F.Supp. 1034. This appeal followed.

Section 12(a) of the 1964 Act, 38 U.S.C. § 725(c), provides in some detail for the issuance of insurance to veterans with non-service-connected disabilities that render them otherwise uninsurable. For the most part policies are to issue on the terms and conditions contained in standard policies of National Service Life Insurance. But the statute authorizes numbers of changes and exceptions, several specific and one general. The specific exceptions include authority to charge higher than standard premiums in "such an amount as the Administrator determines to be necessary for sound actuarial operations." The general ex-

---

\* Judge Freedman heard the argument of this appeal but died before decision.

ception, upon which the regulation here challenged is based, provides that "the insurance shall include such other changes in terms and conditions as the Administrator determines to be reasonable and practicable." 38 U.S.C. § 725(c) (7).

From the outset Congress seems to have intended that this reopened insurance program be self-sustaining. *See* S. Rep. No. 246, 89th Cong., 1st Sess., 1965 U.S.Code Cong. & Ad.News 1603. However, the inclusion in the program of an unestimated number of veterans uninsurable for non-service-connected disabilities appears to have been a last minute enlargement of eligibility accomplished by the Conference Committee of the two Houses. *See* Conference Report No. 1930, 88th Cong., 2d Sess., 1964 U.S. Code Cong. & Ad.News 4021, 4022–23.

Consequently, while the statute retained the above quoted original provision authorizing higher than standard premiums as found "necessary for sound actuarial operations," the Administrator quickly found that it would be impracticable to make the program for the group of commercially uninsurable veterans with non-service-connected disabilities self-sustaining solely by increasing premiums. Accordingly, on December 22, 1964, the Deputy Administrator wrote to the Chairman of the House Veterans' Affairs Committee as follows:

"It is clear that in an individual case with a prognosis of, say, 2 months of life, that the premium, to be self-supporting, has to be roughly $5,000 a month on a $10,000 application. Since a prognosis is only an educated medical guess, what is to be done if the prognosis is wrong and the insured lives more than 2 months? We cannot suspend or return the premiums because there will be cases where the insured may pay only one premium on which the loss will be $5,000.

"This program was discussed at great length in a recent meeting with our Actuarial Advisory Committee and they agreed with the rationale of the preceding paragraph.

"Since it does not appear feasible to make the program self-supporting through the medium of premiums, it has been decided to make it so through the medium of restricted coverage. Specifically, what we are proposing to do is to incorporate a provision in all contracts issued in this program to the effect, in essence, that in the event of death within the first 12 months resulting from, or in any way traceable to the physical condition existing at the time of issue of the policy, the liability for payment will be limited to the premiums paid on the policy. A 1-year suicide clause is also being incorporated in these policies. This, as you can see, will eliminate the heavy early death losses, and permit the establishment of a more practical premium structure to keep the program self-supporting." Hearing before Subcomm. on Insurance of House Comm. on Veterans' Affairs, on Reopening of National Service Life Insurance, 89th Cong., 1st Sess., at 40 (1965).

Other communications to the same effect were made a part of the record of the same hearing. *Id.* at 44, 49, 84.

At a later House Subcommittee hearing on the funding of the program, this colloquy appears:

"MR. BRICKFIELD. And a provision was added that made the non-service-connected disabled eligible for insurance. We were given a mandate by this committee to insure these people, who are really uninsurable, and at the same time make the program self-supporting. We sought various ways of accomplishing this. One was to put in a suicide clause.

"In addition, we added a provision whereby if you die within 1 year, why, you are no longer covered. This was a way of making the program self-supporting.

\* \* \* \* \* \*

"MR. EVERETT [Chairman of the subcommittee]. You have a clear mandate from the Congress that it shall be self-supporting." Hearing before Subcomm. on Insurance of House Comm.

on Veterans' Affairs, Funding of Insurance Reopening Provisions of Public Law 88–664, 89th Cong., 1st Sess., at 2461–62 (1965)."

Thus, we think it clear that Congress was duly and promptly advised of the need for the restriction now in question soon after the enactment of the program and before it was funded. The subsequent enactment of legislation for funding the program upon a basis determined with awareness of this limiting regulation is a significant indication that Congress considered the regulation a reasonable and practical expedient for facilitating the basic legislative intention that the program be self-sustaining. *Cf.* Power Reactor Development Co. v. International Union of Electricians, 1961, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed. 2d 924.

This inferential approval by Congress strengthens our confidence in the conclusion to which we would incline without resort to legislative history, that, in the terms and context of subsection 725(c), the challenged regulation is a "reasonable and practicable" change in the standard terms of National Service Life Insurance. *Accord,* Guy v. United States ex rel. Veterans Administration, E.D.La. 1968, 280 F.Supp. 281; Maxwell v. United States, N.D.Cal.1970, 313 F.Supp. 245, 249 (dictum).

Finally, we agree with the district court that the result reached in this case does not violate the provision of Section 710 of Title 38 that policies of National Service Life Insurance "shall be incontestable," except for reasons not present in this case. The controlling concept that determines the meaning and reach of such an incontestability clause was clearly stated by Chief Judge, later Mr. Justice Cardozo in Metropolitan Life Ins. Co. v. Conway, 1930, 252 N.Y. 449, 452–453, 169 N.E. 642, 642–643.

> "The provision that a policy shall be incontestable * * * is not a mandate as to coverage, a definition of the hazards to be borne by the insurer.

It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. * * *

> * * * * * *
>
> " * * * Where there has been no assumption of the risk, there can be no liability."

While, as the Administrator recognized, the decedent was entitled to the issuance of an insurance policy pursuant to his application, death within one year from preexisting non-service-connected disability was a validly excepted risk.

The judgment will be affirmed.